# COURTS OF APPEALS,

## STATE OF KANSAS.

### NORTHERN DEPARTMENT—EASTERN DIVISION.
### MARCH TERM, 1896.

W. D. GILBERT *et al.* v. THE STATE INSURANCE
COMPANY OF DES MOINES, IOWA.

No. 53.

1. FOREIGN INSURANCE COMPANY—*Right to Sue—Pleading.* It
is unlawful for a fire-insurance company incorporated under the
laws of another state to transact any business of insurance in
this state unless specially authorized so to do by the superintend-
ent of insurance of this state; and, before such company can re-
cover in an action brought by it to enforce a contract relating to
such business, it must allege and prove that, at the time such
contract was entered into, it was authorized to do the business
contracted for.

2. BOND OF AGENT—*Sureties, When not Released.* The sureties
on the bond of an insurance agent are not released from liability
by the mere fact that such agent, after the bond was given, took
a partner into his business with the knowledge of the company,
when the principal in the bond continued as the sole agent of the
company, neither the partner nor the partnership being recog-
nized as such.

3. ———— *Sureties, When not Released.* When the conditions
of a bond executed by an agent with sureties provide that the
agent shall render his accounts and make remittances of money
monthly, the sureties are not released by the mere fact that the
agent is allowed by his principal to be in arrears at various times,
without notice thereof being given to the sureties, when the de-
linquency of the agent is attributable to a want of diligence or
lack of business habits, and not to moral turpitude and dishonesty.

4. ———— *Good Defense.* That the obligee in a bond, in consid-
eration of certain personal services to be performed, and that·

1—KAN. APP.

afterward were performed, by the sureties, agreed to release them from liability thereon for the defaults of their principal, is a good defense to an action on the bond against the sureties to recover for such defaults.

MEMORANDUM.—Error from Atchison district court; ROBERT M. EATON, judge. Action by The State Insurance Company of Des Moines, Iowa, against W. D. Gilbert and George H. Roberts, upon an agent's bond. Judgment for plaintiff. The defendants bring the case to this court. Reversed. The opinion herein, filed April 1, 1896, states the material facts.

*W. D. Gilbert,* and *George H. Roberts,* plaintiffs in error, for themselves.

*Tufts & Crowell,* for defendant in error.

The opinion of the court was delivered by

GARVER, J.: The plaintiffs in error, Gilbert and Roberts, as sureties for one George H. Layng, executed a bond to the defendant in error, conditioned for the faithful performance by Layng of his duties as agent, at the city of Atchison, for the defendant in error. The State Insurance Company was incorporated under the laws of the state of Iowa, and was organized to do business as a fire-insurance company. Layng was appointed agent, and the bond in question executed May 15, 1884. This action was brought by the insurance company to recover the amount for which it was alleged the agent was in arrears with said company. The district court found for the plaintiff, and rendered judgment against the sureties on the bond for the amount ascertained to be due and owing from Layng to the insurance company on account of the business done by him under such agency. Various rulings of the court, which entered into the judgment, are assigned for error.

It is contended, first, that the bond is void, because it does not appear that at the time when it was executed, and Layng authorized by the company to do business in this state, the company had complied with the requirements of the laws of this state so as to be authorized to do business therein.   The evidence shows that from and after March 1, 1885, said company held a certificate of authority from the superintendent of insurance to transact the business of fire insurance in this state, but there is no evidence to show any previous authority.   The statutes of this state, by express inhibition, make it unlawful for any fire-insurance company incorporated under the laws of another state to transact any business of insurance in this state without first procuring from the superintendent of insurance a certificate of authority so to do.   Such certificate may be given only upon compliance with certain conditions of the statute.   When issued, it is *prima facie* evidence of the fact that the requisite conditions have been complied with.   Any contract entered into by such a company to do business in this state, without having complied with the requirements of the statute, is illegal and void, and no right of action can be based upon it.   (*Yount v. Denning*, 52 Kan. 629 ; *Bank of Newberry v. Stegall*, 41 Miss. 142 ; *Thorne v. Insurance Co.*, 80 Pa. St. 15 ; *Daniels v. Barney*, 22 Ind. 207 ; *Jose v. Hewett*, 50 Me. 248 ; *Lumber Co. v. Thomas*, 92 Tenn. 587 ; *Ætna Ins. Co. v. Harvey*, 11 Wis. 394.)

The defendant in error claims that the want of authority to do business in this state is matter of defense, and, therefore, that the mere failure to prove authority will not defeat the action. It seemed to think otherwise when the action was commenced ; for, in the petition, the plaintiff affirmatively alleges au-

thority to do an insurance business in this state at
the time the bond was given. · The fact was put in
issue by the verified denial of the defendants. We
think the burden of proof rests upon the foreign com-
pany (seeking to recover upon a contract relating to
the doing of an insurance business in this state) to
show that it was authorized to do the business covered
by the contract. While the general rule of law un-
doubtedly is that presumptions are made in favor of
the legality of every transaction or contract, yet this
rule can have no application to a contract entered into
by one belonging to a class that is by express statute
excluded from the right to do the things contracted
for, except upon certain conditions. A foreign insur-
ance company has no inherent power to contract in
this state. Its powers are specially conferred, and
then only in exceptional cases. When the petition
shows that the plaintiff is such a company, it is at
once confronted by the statute which makes it unlaw-
ful for it to do an insurance business in this state.
This statutory bar remains as an effectual obstacle to
the right of such company to relief, until it appears
that it is excepted therefrom. The plaintiff is not re-
quired, by direct evidence, to show the legality of the
contract sued on, but merely to establish its legal ca-
pacity to enter into a contract of any nature relating
to the doing of an insurance business in this state.
When a compliance with the conditions of the statute.
has been shown, the right to contract concerning in-
surance business is established, and the general rules
of law apply with reference to the presumption of the
legality of the contracts entered into. When the law
does not imply the right to do a thing, such facts
must be pleaded as, when proven, will establish the
right. Unless, therefore, it can be said that the law

implies the right of a foreign insurance company to do an insurance business in this state, such company must allege and prove its right to make the contract relating to the business of insurance which it seeks to enforce. We are of the opinion that no such presumption can arise in this case. Before the defendant in error can maintain an action upon the bond in question, it must allege and prove that, at the time the bond was given and the business transacted, it was duly authorized to transact the business of insurance, in this state. (*Lumber Co. v. Thomas*, 92 Tenn. 587 ; *Christian v. Mortgage Co.*, 89 Ala. 198 ; *Solomon v. Dreschler*, 4 Minn. 278 ; *Jones v. Smith*, 3 Gray, 500.) The case of *Lumber Co. v. Thomas*, supra, was an action brought by a foreign corporation to recover upon a contract made by it in the state of Tennessee, the laws of which state prohibited any corporation organized under the laws of another state from doing business therein unless certain requirements of the statute were first complied with. In the opinion it is said :

"The courts will deny any relief upon any illegal contract or transaction whenever the illegality is made to appear, whether in the pleadings or proof, and will repel the party guilty of the illegality from the court whenever the fact appears. In order to entitle the complainant to any relief, it must show affirmatively that it had complied with the law. Until that is done, all its transactions are illegal. The burden of proof being upon it, the court can presume nothing in its favor, and can only hold such of its contracts enforceable as it shows were made after it had complied with the law enabling it to make a valid contract and to transact business."

In *Christian v. Mortgage Co.*, supra, it is stated :

"The bill presents a case for relief on which it is essential that complainant should have complied with the law of the state as to the designation of a place of

business, and an agent thereat. It appears from the bill itself that, without such compliance, the right to that relief does not exist. We entertain no doubt but that the failure to allege the fact of compliance is fatal on demurrer, especially as that fact is peculiarly within the knowledge of the complainant. The averment is a part of plaintiff's title to maintain the bill and obtain the relief sought. If the bill had not shown that it prayed relief on a transaction which took place in Alabama, the objection could be taken only by answer or plea. It would then have been a matter of defense. But here the materiality of the fact omitted appears from the facts alleged, and the omissions will be taken (construing the bill most strongly against the complainant) as an admission that the fact does not exist. The demurrer, based upon the failure of the bill to allege that the complainant, at the time of making the loan, had designated a known place of business in this state, and an agent residing thereat, should have been sustained.''

One of the defenses set up alleged that the insurance company had permitted the agent, Layng, to take a partner into the business with him, thereby increasing the risk assumed by the sureties. The facts stated in the answer, as well as the evidence offered in support thereof, do not constitute a legal defense. It is not alleged, nor was there any attempt to prove, that the agency was placed in charge of any one other than Layng. All the business transacted between Layng and the company was in the name of the former, and he, apparently, continued as sole agent of the company at Atchison. His appointment as agent left him free to employ such assistance as he pleased. He could have employed an assistant on a salary, or given a share of the profits of the business. A change in the personnel of the agency would, of course, release the sureties, if made without their as-

sent, but nothing of the kind appears to have been done in this case.

It is further objected that, during the continuance of the agency, Layng was at various times in arrears with the company; that, under the contract and bond, he was required to make monthly reports and settlements; that the company, having knowledge of these defaults, failed to inform the sureties thereof, and permitted him to continue in its employment. This, it is alleged, was a fraud upon the rights of the sureties, and operated to release them thenceforth from any liability for the acts of the agent. The known defaults of the agent would not have the effect claimed unless the company knew, or had reason to know, that they were occasioned by this dishonesty. If the circumstances indicated a mere want of diligence, or lax business habits, and not any moral turpitude on the part of the agent, the principal could continue to trust him, relying upon the bond for protection. (*Telegraph Co. v. Barnes*, 64 N. Y. 485; *Insurance Co. v. Simmons*, 131 Mass. 85.) When the delinquency is attributable to dishonesty, and the creditor has knowledge thereof, he cannot remain silent, but should either discharge the dishonest agent or notify the sureties, so that they may protect themselves.

Another defense made by the sureties was that, after the defalcation of the agent, a satisfaction of the liability of the sureties was agreed upon between them and the defendant in error; that, in consideration of certain services to be by them performed for the company in and about its insurance business, they were to be released from all liability on the bond, and that such agreement was performed on their part. The trial court apparently gave little attention to this defense, and refused most of the evidence offered in sup-

port of it.   In this we think the court erred.   The facts alleged, if proven, constituted a full legal defense to the action, and opportunity should have been given to prove them.

The judgment will be reversed, and the case remanded for a new trial.

All the Judges concurring.