R. A. TROVATTEN v. A. M. MINEA AND ANOTHER.
AMERICAN BONDING COMPANY, RESPONDENT.[1]

December 31, 1942.

No. 33,213.

[1]Reported in 7 N. W. (2d) 390.

*Weyl & Weyl* and *Carl W. Gustafson,* for appellant.
*Daniel F. Foley,* for respondent.

PIRSIG, JUSTICE.

This is an appeal from a judgment for respondent notwithstanding a verdict for plaintiff against respondent and defendant Minea.

From 1934 to September 1939, the period here relevant, defendant A. M. Minea was engaged as a wholesale dealer in the business of selling and distributing butter to retail grocery stores, restaurants, and the like. During this period he purchased butter from the Somerset and Taylors Falls Creameries, in which A. J. Rivard was substantial owner and officer. As required by Minn. St. 1941, §§ 27.01 to 27.20 (Mason St. 1940 Supp. §§ 6240-18½ to 6240-18½p, 6240-19, 6240-20, 6240-21), Minea held a license as such wholesale dealer and had qualified therefor by giving a bond, which until June 1939 was in the sum of $500. As time went on it appears that Minea became in arrears in his payments to Rivard for butter purchased. This indebtedness had reached the sum of approximately $1,300 in the early part of 1939. Rivard became concerned and insisted that Minea increase the amount of his bond to $2,000, with the understanding that Rivard would pay a portion of the premium. Minea did obtain such a bond with respondent, the American Bonding Company, dated June 7, 1939. It designated Minea as the principal and respondent as surety. The conditions of the bond were in part that the principal should "faith-

fully perform the duties imposed upon a licensed dealer at whole-sale * * * make payment, when due, of the purchase price of all produce purchased."

During the same period Minea claims that he was desirous of selling his business, but that he could not do so without obtaining a definite written contract from Rivard relating to the sale of but-ter by Rivard to him. After considerable negotiation, a written contract was prepared under the direction of Rivard and executed. The parties thereto, however, were not confined to Rivard and Minea. Mrs. Minea was added as one of the contracting parties. This agreement "granted unto A. M. Minea and Loretta Minea * * * hereinafter referred to as the dealers, the exclusive right to sell products manufactured" by Rivard in the territory covered by the Twin Cities. Throughout the agreement reference is made to "the dealers." It is "the dealers" who agree to pay for the butter delivered, to exert their best efforts to sell the products, and to pay interest on amounts past due. It is "the dealers" who agree to maintain a wholesale dealer's bond in conformity with law. In short, it is an agreement between the creameries and Mr. and Mrs. Minea jointly.

This agreement was made on July 18, 1939. As stated above, the bond executed on June 7, 1939, was made by Mr. Minea only as principal. Mrs. Minea was not included. After the foregoing agreement was made, no new bond was procured, either by Mrs. Minea or by the Mineas jointly. Therein arises all of the diffi-culty here encountered. Had the transaction been in the hands of a competent lawyer, undoubtedly the questions with which we are now confronted would not have arisen. The testimony in the case suggests that not a lawyer but a layman drew up this con-tract for the parties. This court, in previous decisions, has made it plain that persons not admitted to the bar violate the law when they engage in the practice thereof. Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356; In re Otterness, 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319. As this case demon-

strates, the interests of clients and the public require that this prohibition be observed.

In September 1939 Rivard cancelled the contract. The present suit, as permitted by statute, is brought by the commissioner of agriculture on behalf of the creameries. In substance and effect it is an action by the creameries and will be treated as such here. The suit is on the $2,000 bond to recover amounts due for butter which had been delivered subsequent to the execution of the bond and the agreement. The questions with which we are concerned arise from the defenses interposed by respondent. Its principal defense is that under the agreement of July 18, 1939, the business, in the course of which the butter was purchased, was conducted by Mr. and Mrs. Minea as joint operators, whereas respondent's obligation under the bond extended only to the acts and obligations of Mr. Minea alone, and that this substantial change in the status of its principal operated to relieve it from liability as surety under the bond.

It is undoubtedly the general rule that the liability of a surety for the acts of one or more individuals does not extend to acts performed by him or them jointly with others. The most frequent example arises in cases where the principal is a member of a partnership. A surety for a partner is relieved from liability if a change is made in the membership of the partnership. Spokane Union Stockyards Co. v. Maryland Cas. Co. 105 Wash. 306, 178 P. 3; Lumbermans B. & T. Co. v. Sevier, 149 Wash. 118, 270 P. 291; National Surety Co. v. Geo. E. Breece Lbr. Co. (10 Cir.) 60 F. (2d) 847. By the addition of a new partner, there is always the possibility that the risk assumed by the surety has been increased. Likewise, where a member of a partnership drops out, the surety is adversely affected, for he may have relied upon the judgment and integrity of the retiring member in entering into the suretyship obligation. See Standard Oil Co. v. Arnestad, 6 N. D. 255, 69 N. W. 197, 34 L. R. A. 861, 66 A. S. R. 604. These principles, however, have no application in the present case, for in the trial below it was established that the sales, the purchase

price for which recovery is here sought, were made to Mr. Minea alone. The trial court specifically instructed the jury that the bonding company was liable to plaintiff only for sales made to Mr. Minea, and that it was not liable for any sales made to Mr. and Mrs. Minea jointly, or to Mrs. Minea alone. Under this instruction, the jury returned a verdict for plaintiff against respondent and against Minea, and thus necessarily found that the sales here involved were made to Mr. Minea alone and not to the Mineas jointly or to Mrs. Minea alone. The terms of the bond, of course, specifically covered sales made to Mr. Minea alone.

There is ample evidence to support this finding. It is conceded that prior to the agreement Mr. Minea alone conducted the business, with the incidental help of Mrs. Minea. There is testimony to the effect that the character of the business after the agreement was the same as before. After the agreement, as prior thereto, Mr. Minea alone continued to send in postal card orders to the creameries, signed by him individually, for the butter to be delivered. The books and records kept by the creameries reflected an account in the name of Mr. Minea alone, and the entries therein, begun prior to the agreement, were continued thereafter without interruption, and in the same manner, until the agreement was cancelled. Mrs. Minea testified that she personally did not buy any butter and that the business was conducted the same after the agreement as it was before. Mr. Minea maintained his business headquarters at his home, and it was but natural that his wife should give him assistance without necessarily becoming a joint operator of the business. Respondent points to the fact that after the agreement the sales slips were practically always made out to Mrs. Minea, whereas prior to the agreement they were uniformly made out to Mr. Minea. This would no doubt support a finding that the sales were made to Mrs. Minea, but it is not conclusive, and it was for the jury to decide which of the conflicting evidence it would believe.

Assuming that the terms of the written agreement contemplated the operation of the business by Mr. and Mrs. Minea jointly, the

existence of such a contract is not necessarily inconsistent with the finding of the jury that the sales were made to Mr. Minea alone. There is no legal principle which prohibits parties to a written contract from impliedly or expressly ignoring the terms of the contract in their dealings with each other. Benedict v. Pfunder, 183 Minn. 396, 237 N. W. 2. A written contract may be changed by parol. Youngberg v. Lamberton, 91 Minn. 100, 97 N. W. 571; Hagstrom v. McDougall, 131 Minn. 389, 155 N. W. 391; 4 Page, Contracts, § 2484. By their verdict, the jury necessarily found that, notwithstanding the agreement, the creameries made the sales to Mr. Minea individually, and, as stated, there is evidence upon which that conclusion may rest.

We may concede that under the terms of the contract Mrs. Minea also became liable for the price of the butter sold to Mr. Minea. This does not relieve respondent of its liability as surety under the bond. Since the sale was made to Mr. Minea alone, the addition of Mrs. Minea's liability also for the purchase price of the butter did not increase the risk of respondent. What it actually obtained was an added protection by the liability imposed upon Mrs. Minea by the agreement. It has been held that the addition, without the surety's knowledge or consent, of a greater security to the principal debt by way of guaranty or otherwise does not relieve the surety of liability. Kiefer v. Tolbert, 128 Minn. 519, 151 N. W. 529; Ft. Dodge Grocery Co. v. Brown (Iowa) 152 N. W. 500; Anderson v. Hall, 4 Neb. (Unof.) 494, 94 N. W. 981. The fact that Mrs. Minea was also acting as her husband's assistant is immaterial, for it is established that, absent a provision to the contrary, a surety is not relieved from liability because the principal conducts his business through subordinates or agents. Gilbert v. State Ins. Co. 3 Kan. App. 1, 44 P. 442; Palmer v. Bagg, 56 N. Y. 523.

Respondent also contends that Rivard knew that Mr. Minea was insolvent at the time the bond was procured, yet he undertook to pay a portion of the premium on the bond, and that this relieved the bonding company of its liability. It is sufficient that

the evidence of this knowledge was such that it became a question for the jury. It was not submitted to the jury, and the record shows no request that it be submitted. On this state of the case, we do not consider what the effect of such knowledge might be.

It follows from what has been said that the verdict was justified by the evidence and by law in imposing liability upon respondent under the bond, and the motion for judgment notwithstanding the verdict should not have been granted.

Judgment reversed.

