232 P.2d 386

### BIANCO et al. v. FIREMEN'S FUND INDEMNITY et al.

No. 5265.

Supreme Court of Arizona.

June 11, 1951.

Rehearing Denied July 6, 1951.

Raymond Allee, of Phœnix, Fred C. Struckmeyer, Jr., of Phœnix, for appellants.

Jennings, Strouss, Salmon & Trask, J. A. Riggins, Jr., Henry S. Stevens and Rex H. Moore, all of Phœnix, for appellees.

PHELPS, Justice.

This is an appeal from an order directing a verdict in favor of defendants-appellees and from orders denying plaintiffs-appellants' motions to set aside the judgment, for summary judgment and for a new trial.

The facts are that during the year 1948 appellants were engaged in produce farming in Pinal County, Arizona; that in March of that year they entered into an

oral agreement with Leonard Wernikoff and Robert James Stone (the latter acting as agent of Wernikoff in negotiating the transaction) to (1) market cantaloupes grown by appellants on a 165-acre tract, and (2) honeydews grown on a 60-acre tract during that year, and also for the growing of cantaloupes and honeydews on a 345-acre tract of land owned by appellants on a share-crop basis. Both Wernikoff and Stone were licensed commission merchants in Arizona, the former doing business as American Vegetable Growers, and the latter as Richstone Distributors. Pursuant to the provisions of the Fruit and Vegetable Standardization Act of Arizona each were bonded in the sum of $5000. The Firemen's Fund Indemnity, a corporation, carried the coverage for Wernikoff and the Great American Indemnity Company, of New York, carried the coverage for Stone.

The Arizona Fruit and Vegetable Standardization Act requires persons who are licensed to do business as commission merchants to keep correct records of every consignment of farm products received for sale and section 49–1016(a), A.C.A.1939, provides that: "Unless otherwise agreed in writing, remittance in full of the amount realized from any such sale, including all collections, overcharges, and damages, less the agreed commission and other charges, and accompanied by a complete statement of the transaction, shall be made to the consignor within ten (10) days after receipt of the money by the commission merchant."

Appellants were not paid for the melons grown by them on the 165-acre and the 60-acre tracts nor was there an accounting made to them therefor. Neither were they paid in full, nor an accounting made, for melons grown on the 345-acre tract cultivated on a share-crop basis. They therefore brought this action against both Wernikoff and Stone and the bonding companies on two separate counts praying for an accounting and for a judgment against Wernikoff and Stone and their sureties for the amount found to be due.

The cause was tried to a jury and submitted on special interrogatories. Upon the answers given thereto the court entered judgment against both Wernikoff and Stone for the sum of $12,474.82 on the first cause of action and for $770.55 on the second cause of action from which no appeal was taken. On motion of appellants the court dismissed the second cause of action against appellees Firemen's Fund Indemnity and Great American Indemnity Company, of New York.

Subsequently, at the close of all the evidence, appellees presented their motion to the trial court for an instructed verdict in their behalf on the first cause of action which involved the handling of melons grown by appellants on the 165-acre and the 60-acre tracts. The motion for a directed verdict was based upon the ground

"* * * that the evidence fails to disclose liability upon either of the defendants or the amount thereof, and the proof fails to show liability in accordance with the obligations of the bonds as introduced in evidence by the plaintiffs."

The court granted the motion upon the ground "* * * that the liability of each of said defendants was an individual liability as to the particular defendant they were sureties for, and that it does not extend to liability for Wernikoff and Stone as partners or as joint venturers."

Appellants have assigned some thirteen errors all of which involve but one primary question for our determination. Did the court err in granting an instructed verdict in favor of appellees? This question can be answered only after a determination, first, of the relationship existing between Wernikoff and Stone, and second, the relationship existing between appellants and Wernikoff and Stone as created by the oral agreement of March, 1948. In order to determine these questions it will be necessary to analyze the evidence relating thereto. Apparently appellants' position here is not in complete harmony with their position during the trial of the case. While they didn't allege in their complaint the existence of a partnership between Wernikoff and Stone they did attempt, but failed, to prove such relation during the course of the trial. Singularly enough, however, appellees not only plead but introduced evidence to support their pleading that such partnership relation did not exist, while here they are attempting to maintain the position that such a partnership relation did in fact exist.

There is no express finding by the trial court that Wernikoff and Stone were partners although such relation is clearly implied in the court's order directing a verdict for appellees. Stone did not attend and testify at the trial. Wernikoff testified and emphatically denied that such a relation did exist between him and Stone and stated that Stone had no financial interest either in the share-crop agreement or the brokerage transaction. He stated he was not familiar with growing and marketing melons in the West and that he employed Stone to advise him on matters connected with the growing of melons here; that Stone was to act as his agent in selling the same wherever grown, and that he was to pay him $50 commission for each car sold. Wernikoff further testified that he advanced to Stone small amounts from time to time during the growing season and at one time advanced $500 to be applied on his commission of $50 per car. Had a partnership relation been established between Wernikoff and Stone the court's order in directing a verdict for appellees would have been correct. A surety even for a partner is released from liability if there is a change in the members of the partnership. Trovatten v. Minea, 213 Minn. 544, 7 N.W. 2d 390, 144 A.L.R. 1263.

■ A careful study of the transcript of the evidence in the instant case, however, compels the conclusion that no partnership relation existed between Wernikoff and Stone during the period involved. There is no substantial evidence in the record upon which a finding of such a partnership relation could legitimately rest and it was reversible error for the trial court to so find. It is true the record discloses that Stone conducted most of the negotiations with Biancos leading up to the consummation of the oral agreement. But the most that can be gleaned from the conversation with Bianco from which the partnership relation could be inferred, was that Stone usually used the pronoun "we" in referring to what Wernikoff's obligations were to be, under the terms of the oral agreement. There is no evidence whatever that Stone had any investment in the venture, that he advanced any money to grow the crop on the 345-acre tract, that he ever drew a check on the funds used therefor, or that he was to share in the profits or the losses arising out of either of these transactions or that he had any control thereof except as the agent of Wernikoff. On the contrary the evidence is indisputable that Stone neither received any of the profits nor assumed any of the losses of the venture; that his sole interest was his agreement with Wernikoff to act in an advisory capacity during the growing season and to act as his agent in marketing the melons upon an agreed commission of $50 per car.

Peter Bianco, one of appellants, testified that he knew Wernikoff was doing business under the name of American Vegetable Growers and that he learned in June, 1948, Stone was doing business under the name of Richstone Distributors. He also testified that the checks were first required to be made out in the joint name of American Vegetable Growers and the Biancos and that Wernikoff always endorsed the checks for the American Vegetable Growers. He stated that Stone objected to the checks being made out to Bianco Brothers and insisted upon their being made out in favor of Bianco Brothers and American Vegetable Growers " * * * because they were just starting out in business and they didn't have a very high credit rating and they said they would appreciate it very much if we would at least agree to have their name on the check as well. * * * Mr. Stone said he didn't want his name to enter any legal documents whatsoever. And the deal was to be known as American Vegetable Growers because of his previous deal at Tucson he didn't want his name to enter the picture at all."

He was then asked:

"Now what is Stone's name for his business, the way he conducts business, do you know that?

"A Richstone, I believe."

The fact that Stone referred to himself and Wernikoff as "we" or to the Vegetable Growers Association and himself as "we" does not even tend to establish a partner-

ship between Stone and Wernikoff. Most salesmen and agents representing firms, in referring to the business of their principal use the pronoun "we". Certainly no inference of financial interest could be drawn from such language.

■ We therefore hold that there is no substantial evidence in the record upon which to base a finding by the trial court that a partnership relation existed between Wernikoff and Stone. We further hold that at all times during such period of time the defendant Stone was acting in the capacity of agent for defendant Wernikoff. This being true, no liability could arise under the conditions of the bond executed by Great American Indemnity Company, of New York, in favor of Stone doing business as Richstone Distributors for the reason that as such agent he participated in none of the benefits of the transaction except as an employee of Wernikoff for which he was compensated for the service rendered. Appellants contend that as to them Stone is estopped to deny the existence of a partnership relation between himself and Wernikoff. Assuming, without conceding, this to be true, we are of the view that such estoppel could not be extended to create a liability against his surety Great American Indemnity Company, of New York. Their liability can only arise out of the bond contract with Stone. As above stated they agreed only to act as surety for Stone as a licensed commission merchant doing business as Richstone Distributors. If he is held to be responsible to appellants on the ground that his conduct estops him from denying the existence of a partnership relation between him and Wernikoff, then that partnership relation relieves his surety from all liability to him on its bond obligation. The hazards of the surety would be enlarged to the same extent by a partnership transaction where the partnership was created by estoppel as when it is created by contract. In neither case would the bonding company be liable.

■ We further hold that inasmuch as Wernikoff was solely responsible for the breach of any duty to appellants created under the terms of his agreement with them, and inasmuch as Stone was not obligated to them under the terms of such contract the question of a joint and several judgment against the two does not arise in this appeal. It follows that for the breach of Wernikoff's contract with appellants in failing to account to them and to pay them within ten days after receipt of the sale price therefor, Firemen's Fund Indemnity, a corporation, is solely responsible therefor to the extent of the obligation assumed by it under the terms of its bond, to wit, the sum of $5000.

■ Counsel for appellees contend that under no circumstances are the appellants entitled to a summary judgment but that appellees are entitled to a new trial on the question of whether or not the acts claimed to have been committed by defendant Wernikoff violated the conditions of their bond.

187

We do not think that there is any merit to this position for the reason that appellees had the opportunity of presenting these very questions and did present them to the court in their motions for an instructed verdict. They also had the opportunity to present all of their evidence to the court bearing upon this issue at the trial of the cause.

Therefore it is ordered that the judgment of the trial court be reversed as to Firemen's Fund Indemnity, a corporation, and that judgment be entered in favor of appellants and against appellee Firemen's Fund Indemnity, a corporation, in accordance with the terms and conditions of its bond; and that it be affirmed as to the Great American Indemnity Company, of New York.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concurring.