ZUNI CONSTRUCTION CO., INC., a Nevada Corpora-
tion, Appellant, v. GREAT AMERICAN INSUR-
ANCE COMPANY, an Insurance Corporation,
Respondent.

No. 6028

May 11, 1970                    468 P.2d 980

*Singleton, Beckley, DeLanoy, Jemison & Reid,* of Las
Vegas, for Appellant.

*Albright, George, Johnson, Steffen & Simmons,* of Las
Vegas, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Zuni Construction Co. entered into two separate subcontract agreements with White Concrete Co. as follows:

1.  That White could perform the concrete work on the Rancho-Sahara Medical Center project for $95,034, and

2. That White would perform the concrete work to be done on the University of Nevada at Las Vegas Library for $86,753.

The first contract was executed February 14, 1966 and the second on May 20, 1966. The respondent surety company wrote the performance bonds for both jobs. After the first contract was signed Zuni and White agreed that White would supply the concrete which White had not originally agreed to do and added $29,954 to the contract so that the total price became $124,988. They did not notify the bonding company of the change. Instead, when White applied for a bond on the second project their financial statement showed the Rancho-Sahara obligation to be $125,034 which by that time reflected the new total figure.

Still later, White formed a corporation called White, Inc., composed of three stockholders, White 50 percent, Scott 25 percent and Miller 25 percent. Miller and Scott were officers of Zuni and each invested $10,000 in the White corporation.

White Concrete Co. assigned the library contract to the corporation. Zuni consented to the assignment but the assignment contained no specific reference as to whether or not Zuni released White from individual liability or responsibility under the contract.

In October 1966 White left both jobs and Zuni was forced to relet the contracts so that the projects could be completed. Zuni sued the surety for $17,764 on the Rancho job and $33,778 on the library job. The surety denied liability on both, as to the Rancho job because of the alteration in the contract wherein White was to supply the concrete and as to the University job on the grounds that the assignment to White, Inc., from White Concrete Co. constituted a novation, thereby releasing the surety.

The trial court granted the surety's motions for summary judgment on both claims and Zuni appeals.

1. By granting summary judgment the lower court construed the contracts strictly in favor of the surety. Summary judgment is a drastic remedy, therefore, all evidence favorable to the party against whom such summary judgment was rendered will be accepted as true. Pine v. Leavitt, 84 Nev. 507, 445 P.2d 942 (1968). All favorable inferences will be drawn in favor of the party who lost on the summary judgment. Kaminski v. Woodbury, 85 Nev. 667, 462 P.2d 45

(1969). The trial court is to consider all affidavits, depositions, pleadings and answers to interrogatories on file. Adamson v. Bowker, 85 Nev. 115, 450 P.2d 796 (1969). The trial court should only grant a summary judgment where no genuine issue of fact remains for trial. Pine v. Leavitt, supra; Whiston v. McDonald, 85 Nev. 508, 458 P.2d 107 (1969); Bair v. Berry, 86 Nev. 26, 464 P.2d 469 (1970). A litigant is entitled to a trial on the merits where there is the slightest doubt as to the facts. Short v. Riviera Hotel, Inc., 79 Nev. 94, 378 P.2d 979 (1963).

2.  Strict construction in favor of a compensated surety is no longer the policy of the law in this state. Our court departed from the tight application of Truckee Lodge v. Wood, 14 Nev. 293 (1879), and in Acoustics, Inc. v. American Surety Co., 74 Nev. 6, 320 P.2d 626 (1958), stated the current authority to be that the contract of a *compensated* surety is to be interpreted liberally in the interests of the promisee and the beneficiaries rather than strictly in favor of the surety. By our emphasis on "compensated" surety we mean to distinguish the application of the rule from that of the voluntary or accommodating guarantor as in Adelson v. Wilson & Co., 81 Nev. 15, 398 P.2d 106 (1965); Nevada Bank of Commerce v. Esquire Real Estate, Inc., 86 Nev. 238, 468 P.2d 22 (1970); Chapman v. Hoage, 296 U.S. 526 (1936); Honolulu Roofing Co. v. Felix, 426 P.2d 298 (Haw. 1967); E. E. Rabalais & Son, Inc. v. United Bonding Ins. Co., 226 So.2d 528 (La.App. 1969); Ore-Ida Potato Products, Inc. v. United Pacific Ins. Co., 392 P.2d 191 (Idaho 1964); Atterbury v. Carpenter, 321 F.2d 921 (9th Cir. 1963); Restatement, Security § 82(i) (1941); 3 Corbin, Contracts § 559, at 266 (1960).

Where there is a compensated surety, the surety cannot be discharged from its obligation when there is an alteration or modification in the contract unless it shows it was prejudiced or injured by the variance. Ardsley, Inc. v. United Pac. Ins. Co., 74 Nev. 377, 332 P.2d 1000 (1958); Illinois Surety Co. v. John Davis Co., 244 U.S. 376 (1917); National Union Fire Ins. Co. v. Denver Brick and Pipe Co., 427 P.2d 861 (Colo. 1967).

3.  *Rancho-Sahara Subcontract:*

As already indicated, Zuni sued the surety for $17,764.00

claimed to be due on this project. Of that amount $12,681.85. is admittedly for the default of White, the principal on the bond, in not paying for the cement he had purchased. The change in the subcontract between White and Zuni Construction which required White to buy the cement and pay for it was a material change which increased the contract price approximately 32 percent and accordingly increased the risk of the compensated surety to his prejudice in the sum of $12,681.85. To this extent the lower court ruled correctly that the surety was discharged. The court erred, however, in discharging the surety for the full amount of Zuni's claim and trial should occur as to the balance of its claim in the amount of $5,083. We apply the principal enunciated by Restatement of Security § 128(b) that when the contract change results in an easily measured damage to the compensated surety so that the penalty of a total discharge of the surety would be disproportionate to the blame attaching to the creditor for the modification, the surety is discharged only to the extent of its loss. See also Reliance Ins. Co. v. Colbert, 365 F.2d 530, 535 (D.C.Cir. 1966).

4. *Nevada Library Subcontract:*

In Williams v. Crusader Disc. Corp., 75 Nev. 67, 334 P.2d 843 (1959), this court ruled that the substitution of a new obligation for an existing one is a novation because the first debt is extinguished and all parties are discharged on the first contract. If White is discharged by the novation, then the surety is discharged also. Consequently, it must be determined whether or not all of the parties agreed at the time the contract was assigned by White to the corporation that the consent to the assignment constituted a discharge of White as the original debtor and the corporation substituted in his place. Nevada Bank of Commerce v. Esquire Real Estate, Inc., supra. The assignment did not so state. The intent of the parties to cause a novation must be clear. Consent to an assignment is not enough. All inferences must be drawn in Zuni's favor, therefore, it cannot be concluded on summary judgment that Zuni's consent was accompanied by an intent to release White. The case must go to trial to ascertain the intent when the assginment was made. Holland v. Crummer Corp., 78 Nev. 1, 368 P.2d 63 (1962); Reilly v. Cook, McKay & Co., 381 P.2d 261 (Colo. 1963); W. Crawford Smith, Inc. v. Watkins, 425 S.W.2d 276 (Mo.App. 1968); Mace v. Conde Nast Publications, Inc., 237 A.2d 360 (Conn. 1967).

The contract and performance bond both bound the parties, "their heirs, executors, successors, administrators, and assigns." Similar language in Illinois Surety Co. v. John Davis Co., supra, was not enough to allow the discharge of the surety.

Again, in this instance the surety is required to show some injury from the assignment. Respondent argues that the two stockholders, Scott and Miller, might have been in a position to detrimentally and adversely affect the operation of White, Inc., and by reason of their participation in the corporation a factor was created by the assignment that the surety company had not bargained for. It can be argued conversely that their contributions of capital gave the surety a stronger company upon which it could rely. Such contentions must be fully explored, but not upon affidavits. James Miles & Son Co. v. Aetna Casualty & Surety Co., 1 F.Supp. 925 (D. Mass. 1932); Corvallis & A. R. R. Co. v. Portland E. & E. Ry. Co., 163 P. 1173 (Ore. 1917); Glens Falls Insurance Co. v. Wright Contracting Co., 276 F.Supp. 122 (D. Md. 1965); Bianco v. Firemen's Fund Indemnity, 232 P.2d 386 (Ariz. 1951).

Only a full-scale trial can develop the merits of the problems presented. Reversed and remanded for trial in accordance with this opinion.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.