CHARLES W. CARDINAL (AND, BY SUBSTITUTION, THERESA CARDINAL, EXECUTRIX OF THE ESTATE OF CHARLES W. CARDINAL, DECEASED) AND THERESA CARDINAL, AS INDIVIDUALS AND AS GENERAL PARTNERS OF JOE CARDINAL COMPANY, A PARTNERSHIP, APPELLANTS, v. C. H. MASLAND AND SONS, A PENNSYLVANIA CORPORATION, RESPONDENT.

No. 6308

May 14, 1971                              484 P.2d 1075

[Rehearing granted July 15, 1971]

*Lionel Sawyer Collins & Wartman* and *Jeffrey N. Sheehan,* of Las Vegas, for Appellants.

*Beckley, DeLanoy & Jemison,* of Las Vegas, for Respondent.

# OPINION

By the Court, MOWBRAY, J.:

Charles W. Cardinal and Theresa Cardinal, as individuals and as general partners of Joe Cardinal Company, a partnership, commenced this action in the lower court against the defendant-respondent to set aside a forged deed of trust covering property of Joe Cardinal Company. The defendant-respondent answered the complaint and later moved for summary judgment on the ground that the company had ratified the forgery and was thereby precluded from recovery. The district judge agreed, and he granted summary judgment in favor of the defendant-respondent. Hence, this appeal.

1. *The Facts.*

In February 1965, Robert J. Cardinal signed a promissory note for $167,000 in favor of respondent C. H. Masland and Sons, which note was secured by a deed of trust covering property owned by Joe Cardinal Company.[1] Robert personally signed the deed of trust, and it is agreed that he forged thereto the signatures of Charles and Theresa. The note was not paid, and Masland foreclosed on the deed of trust. This present action, to cancel the deed of trust and recover the partnership property sold to Masland under the foreclosure sale, was commenced in November 1966, approximately 21 months after Robert had committed the forgery. It is Masland's contention that Charles had knowledge of Robert's forgery in early 1965, but that he did nothing about it until the commencement of this action, and that the failure promptly to repudiate the forgery constituted ratification of it by the company.[2] It was upon this reasoning that the district judge granted Masland's motion for summary judgment.

---

[1] The Joe Cardinal Company consisted of three general partners: Robert J. Cardinal; his brother, Charles W. Cardinal; and their mother, Theresa Cardinal. Since the filing of the complaint, both Robert and Charles have died. Theresa, who is the executrix of their estates, has been substituted for them in this case.

[2] The district judge held:

"Charles Cardinal admitted in his deposition that he had actual knowledge of the Masland encumbrance early in 1965 when he desired to sell certain property described in the deed of trust but discovered he could not because of the encumbrance. Since he took no action to repudiate the Masland transaction within a reasonable time, he and the partnership must be deemed to have ratified it."

## 2. *Summary Judgment.*

Summary judgment may be granted only where no genuine issue of fact remains for trial. Zuni Constr. Co. v. Great Am. Ins. Co., 86 Nev. 364, 468 P.2d 980 (1970); Old W. Enterprises, Inc. v. Reno Escrow Co., 86 Nev. 727, 476 P.2d 1 (1970). The reason for the rule has been set forth in Parman v. Petricciani, 70 Nev. 427, 436, 272 P.2d 492, 496 (1954), where this court said:

"In Doehler Metal Furniture Co. v. [United States], . . . 149 F.2d 130, 135 [2d Cir. 1945], it is stated, 'We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. *A litigant has a right to a trial where there is the slightest doubt as to the facts * * *.* Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay.'

"In Griffith v. William Penn Broadcasting Co., . . ., 4 F.R.D. 475, 477 [E.D.Pa. 1945], it is stated, '[T]he presence of a real and material issue of fact precludes further consideration of the matter under this [R]ule [56]. * * * *It is not sufficient that the court may not credit the evidence to be offered or that the weight of the evidence is clearly in favor of one party. Under such circumstances the parties are entitled to a trial by jury to determine the facts.'*

"There can be no question as to these well-established principles. Summary judgment may not be used as a short cut to the resolving of disputes upon facts material to the determination of the legal rights of the parties. . . ." (Emphasis added.)

We turn to consider the issues presented to the court below.

## 3. *The Company's Knowledge of the Forgery.*

Respondent's motion for summary judgment was filed October 9, 1969, after the taking of Charles's deposition, which was offered at the hearing on the motion. Masland argued that there was no remaining issue of fact to be determined by the court regarding when the partnership first had knowledge of the forgery, because Charles, a general partner, admitted he had knowledge of the forgery in early 1965.[3] We agree. Appellants contend that the testimony of Edward T. Groves, the

---

[3]Deposition of Charles W. Cardinal, in relevant part:

"Q [by Grant Sawyer, an attorney for Cardinal]. In 1965 you say that you decided—or, that you would like to sell an acre and a quarter which was located back of the Frontier?

company's accountant, varies from that of Charles and thereby creates a fact issue to be determined at time of trial. We do not agree.[4] Even if it did, the court was at liberty to disregard the testimony, for Groves was not a member of the partnership. Cf. Aldabe v. Adams, 81 Nev. 280, 402 P.2d 34 (1965).

---

"A.  *The first part of '65, yes.*

"Q.  Why didn't you sell that property at the time?

"A.  *On account of it was encumbered.*

"Q.  Had you known prior to that time it was encumbered? Did you know there was anything against the property?

"A.  No, no, I did not.

"Q.  *Did you know how that encumbrance was created against the property after you found you couldn't sell it?*

"A.  *Through the, I believe it was, Masland and Sons.*

"Q.  But do you have any idea of it?

"A.  No.

" . . .

"Q.  When Mr. Groves told you that the acre and a quarter behind the Frontier couldn't be sold, what did you say to him, if you remember?

"A.  I just told him if it can't be sold it can't be sold.

"Q.  Were you angry? What was your reaction? Can you recall?

"A.  I was disturbed about it, yes.

"Q.  Did you understand the situation at all?

"A.  Yes.

"Q.  Did you understand how it had happened or why couldn't it be sold?

"A.  Yes.

"Q.  Well, had you seen any documents or anything?

"A.  No, I hadn't.

"Q.  *Then, did you understand why it couldn't be sold?*

"A.  *Yes, it was encumbered to Masland and Sons.*

" . . .

"Q  [by W. Bruce Beckley, attorney for Masland].  Now, when you discussed this one and a quarter acres, which was mortgaged to Masland, with Mr. Groves *in 1965,* what did you do after you found out there was a trust deed on it in favor of Masland?

"A.  There was nothing I could do.

"Q.  *You did nothing?*

"A.  *No, I couldn't.*

"Q.  *But the fact is you did nothing, isn't that right?*

"A.  *That is right.*

"Q.  *And when did this conversation with Mr. Groves take place?*

"A.  *The first part of '65.* I can't recall the time." (Emphasis added.)

[4]Deposition of Edward T. Groves, in relevant part:

"Q  [by Mr. Beckley].  I will show you, Mr. Groves, what appears to be escrow instructions, Pioneer Title Insurance Company of Nevada, dated August 18, 1964, and ask you if that in any way refreshes your recollection?

"A.  *Yes, it does. I thought it was '66.*

"Q.  What do those escrow instructions cover?

## 4. *Ratification.*

Since Charles, a general partner, had knowledge of the forgery in early 1965 and did nothing about it until the commencement of this action on November 25, 1966, the district judge ruled as a matter of law: "[T]he partnership must be deemed to have ratified it." Appellants argue that this ruling was erroneous because the question of what is a reasonable time within which to repudiate after notice of the forgery is a fact question and that this question was not appropriately explored in the depositions taken. Respondent, on the other hand, contends that when the time period between knowledge of the forgery and repudiation is undisputed, the determination of reasonableness is purely a question of law. We believe, however, that the question is one that turns on the facts and circumstances of each particular case; that the time period between when the forgery becomes known and when repudiation occurs, standing alone, may not always be controlling. Inquiry was not directed to the reasons, if any exist, for the delay in repudiation and filing suit. Circumstances may or may

---

"A.   It covers the sale of this particular acre and a quarter in the amount of $15,000 with $500 down to Edward T. Groves.

"Q.   That is you?

"A.   That is me.

"Q.   And who is named as the seller in those instructions?

"A.   Charles W. Cardinal.

"Q.   So an attempt was made by Mr. Charles Cardinal to sell to you as an individual the 1¼ acre parcel behind the Frontier Hotel *in 1964?*

"A.   That is correct.

"Q.   Now, was that transaction consummated?

"A.   No, *it* was not.

"Q.   Why not?

"A.   *Because the title was clouded. It was not clouded, but it was under—up for collateral.*

"Q.   It was what?

"A.   Put up as collateral for a loan.

"Q.   *To Masland?*

"A.   *I believe so.*

"Q.   Was that escrow cancelled?

"A.   Yes, it was.

"Q.   I show you a document dated *January 19, 1965,* and ask you if you can identify that?

"A.   That is correct.

"Q.   What is that?

"A.   *It is a cancellation of Escrow No. LV91855 covering the escrow of the 1¼ acres of land from Charles W. Cardinal to Edward T. Groves."* (Emphasis added.)

not exist to excuse such delay. Absent this information, it was inappropriate for the district court to rule that the passage of time alone established ratification and precludes this action. For this reason we conclude that a factual determination remains to be resolved by the trier of the facts.

The court said, in Rayonier, Inc. v. Polson, 400 F.2d 909, 915 (9th Cir. 1968):

". . . Conduct which may be held to manifest an election to affirm an unauthorized contract includes the failure to repudiate the contract . . .

"Although Jackson [agent] and Rayonier executed the contract in January 1960, Polson [principal] did not object to it until July, 1962, a period of over two years. *However, the mere passage of time does not necessarily operate to establish ratification.* [Citation.] In order to infer an election to ratify a contract it is, of course, necessary that the party to be charged have full knowledge of all material facts [citations]; in the present case a considerable dispute existed concerning when Polson first acquired such knowledge." (Emphasis added.)

Here, Robert controlled the affairs of the company. Charles and Theresa had very little to do with its operation. Their inactivity could possibly justify a longer period in which to repudiate the managing partner's forgery.

We rule that, under the facts presented, a material fact issue does remain to be determined. Therefore, the order granting summary judgment is reversed, and the case is remanded for a limited trial on the sole issue of ratification.

ZENOFF, C. J., and GUNDERSON, J., concur.

THOMPSON, J., with whom BATJER, J., concurs, dissenting:

It is undisputed that Charles Cardinal, a general partner, acquired knowledge of his brother's forgery in early 1965. Accordingly, the district court ruled, as a matter of law, that 21 months was an unreasonable time to wait before filing suit and that the plaintiffs must be deemed to have ratified the forgery. We cannot fault his decision on this point. The defendants acted in good faith throughout and are innocent of wrongdoing. The criminal act was that of a partner of the plaintiffs who here seek relief. It seems to us that the burden was on them to explain or excuse their delay in commencing suit [NRCP 56(e); Adamson v. Bowker, 85 Nev. 115, 450 P.2d 796 (1969); Tobler and Oliver v. Bd. Trustees, 84 Nev. 438, 442 P.2d 904 (1968)] or suffer possible defeat when faced with a motion for summary judgment. No explanation or

excuse was offered to the court for its evaluation. The plaintiffs alone possessed that knowledge. We would affirm.