No. 16,590.

PROUTY ET AL. *v.* HERON.
(255 P. [2d] 755)

Decided March 9, 1953. Rehearing denied April 6, 1953.

Mr. JOHN W. METZGER, Attorney General, Mr. ALLEN MOORE, Deputy, Mr. DONALD C. McKINLAY, Assistant; Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. CHARLES M. SOLLER, Assistant, Mr. FRANK A. WACHOB, Assistant, Mr. JAMES D. PARRIOTT, JR., Assistant, for plaintiffs in error.

Mr. GEORGE K. THOMAS, for defendant in error.

Mr. LOUIS I. HART, JR., amicus curiae.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

DEFENDANT in error was plaintiff in the trial court and we will herein refer to him as plaintiff. Plaintiffs in error were defendants in the trial court and we will hereinafter refer to them as defendants or board.

Plaintiff filed his complaint in the district court of the City and County of Denver, in which he sought to enjoin defendants from classifying qualified engineers as to specific branches of their profession and thereby limiting the practice of such engineers to those phases of the profession properly belonging to the classification in which such engineers were placed by the board. Plaintiff further sought by court order to correct the roster, and licensing cards, issued by the board to registered engineers, in such manner as to entitle registrants to practice the profession of engineering without limitation as to class or branch of the profession; and for a declaratory judgment holding certain rules and regula-

tions adopted by the defendant board to be void. He further sought to enjoin the printing and publication, by defendants, of a pamphlet containing, among other things, a roster of engineers authorized to practice their profession in Colorado and the branch of the profession in which each engineer had been classified.

November 4, 1949, the trial court granted the relief sought by plaintiff, and thereafter the board brought the case to this court by writ of error to review that judgment.

Chapter 161, of the 1951 Session Laws of Colorado, relating to "Engineering and Land Surveying," became effective March 29, 1951, and pursuant to joint motion of the parties the cause was remanded to the trial court for the purpose of permitting defendants to file a motion for modification of the judgment and for dissolution of the injunction. Said motion was based upon the ground that the stated act of the legislature expressly commanded the performance by defendants of those acts which the trial court had enjoined, and fully authorized the board to do those things of which plaintiff complained.

Plaintiff filed an answer to defendants' motion, in which the 1951 Act of the legislature was attacked on constitutional grounds, which we hereinafter consider. Nine witnesses were examined at the hearing which followed. November 16, 1951, the motion for modification of the judgment and for dissolution of the injunction was denied.

The trial court stated that chapter 161, Session Laws of Colorado 1951, operated as an " * * * infringement on petitioner's rights under the Fourteenth Amendment and the pertinent section of our own Article 2 of the Colorado Constitution, the court holds the present act unconstitutional * * *." The trial court accordingly refused to dissolve the injunction.

Facts essential to the proper solution of this controversy are as follows: Plaintiff was duly licensed to prac-

tice the profession of engineering in the State of Colorado on May 12, 1921, under authority vested in the State Board of Engineer Examiners by an Act of the General Assembly approved April 9, 1919. S.L. '19, c. 185. This license contained, inter alia, the following statement: "The State Board of Engineer Examiners of Colorado * * * having determined that Kenneth A. Heron has fully complied with said act and is entitled to a license to practice the Profession of Engineering, do hereby license him to practice said profession *. * *." Thereafter plaintiff left the State of Colorado, returning in the year 1945, and in December of that year he re-applied for registration as a professional engineer in Colorado, paid the required fee, and received a registration card certifying that he was especially qualified to practice in the branch of civil engineering. Plaintiff protested the limitation implied by this qualified registration, and requested a license without limitation or classification, but this never was issued.

In December, 1947, plaintiff again applied for a renewal license to practice his profession for the year 1948 and requested that his registration be carried on the records of the defendant board as "professional engineer" without limitation or classification. The request, however, was denied and again the registration card was issued stating that plaintiff was qualified in the branch of civil engineering. Plaintiff demanded a hearing, which was denied.

In the year 1949 plaintiff again was registered as an engineer qualified in the branch of civil engineering, and on June 23rd of that year he, by his attorney, protested such limited registration and made formal demand on the board for the withdrawal of all limitations on his license to practice engineering in Colorado, and demanded a correction of his registration, including the license card and the roster of engineers, in such manner as to show that he was licensed to practice the profession of engineering without qualification or limitation.

Upon refusal of defendant board to comply with this demand, suit was instituted.

In the complaint, counsel for plaintiff set forth the foregoing facts and alleged that defendant board was about to print and publish for free distribution a pamphlet containing, among other things, a roster of registered engineers and the classification to which each was assigned, and further alleged that there was no authority under the law for the printing and distribution of such a roster.

Defendant board in its answer set out the regulations which it had adopted purporting to authorize the classification of engineers and publication of the roster of which plaintiff complained. In the pleadings two questions were raised which were correctly stated by the trial court as follows:

"First: Has the State Board of Examiners of Engineers and Land Surveyors of the State of Colorado the right and authority to license an engineer and to issue a certificate limiting and qualifying such practice by the words such as 'Civil,' 'Electrical,' 'Mechanical,' etc.

"Second: Is there authority in the law for the printing and free distribution of the annual report and roster of engineers to be paid out of the funds collected by said Board as license fees."

No specific authority for the classification of professional engineers was contained in the applicable statute. Its validity depends upon the legality of certain rules and regulations adopted by the board. We deem it unnecessary to set them forth in detail. Suffice it to say that the trial court correctly held that the regulations, upon which the board relied as authority for their classification of engineers, and for the publication and distribution of a roster including such classifications, were void.

Chapter 161, Session Laws of Colorado 1951, as hereinbefore stated, was enacted subsequent to the entry of the trial court's judgment which granted the relief

sought by plaintiff. Upon reconsideration of the case on the questions raised by the motion to dissolve the injunction, and the answer thereto which was filed by plaintiff, the trial court considered the 1951 Act at length and stated, inter alia:

"The court has given serious and careful consideration as to whether the 1951 Act, Chapter 161, is unconstitutional on the following grounds: First: That it is discriminatory; Second: That it constitutes special legislation; Third: That there was an unauthorized delegation of power by the Legislature to the Board and that such delegation is arbitrary, capricious and unreasonable."

The Attorney General, on behalf of defendant board, asserted in his brief that the questions legitimately raised concerning the subject matter of the action were: "(a) Whether or not there was an unconstitutional delegation of legislative authority to the Board; (b) whether or not the legislature unlawfully granted legislative authority for the printing and distribution of classified rosters and cards; (c) whether or not the classification directed by the legislature constituted a deprivation of property without due process of law; (d) whether or not classification directed by the legislature was discriminatory." Consideration and resolution of two of these queries will suffice to determine the rights of plaintiff in the instant action, and to more clearly define the powers of the legislature with regard to the classification of those who in the future may apply for a license to practice the profession of engineering in all or any of its branches.

Questions to be Determined.

■ First: *Is the right to practice a profession, once legally granted, within the rights protected by the Constitutions of the United States and of the State of Colorado, which provide that no person shall be deprived of life, liberty or property without due process of law?*

This question is answered in the affirmative. Our

court has heretofore stated that the professions of law, medicine and dentistry are generally considered as learned professions, and that, "Neither is an ordinary trade or calling which all citizens alike may pursue." *People v. Painless Parker,* 85 Colo. 304, 275 Pac. 928. The profession of engineering is no "ordinary trade or calling." That profession also involves "personal skill, presupposes a period of novitiate, intensive preparation, due examination and admission, and that the licentiate's sheepskin is solely his own." *State Board of Dental Examiners v. Savelle,* 90 Colo. 177, 8 P. (2d) 693. In *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 Pac. 132, our court said that the right to practice a learned profession was a "valuable right."

The right to practice such a profession has been recognized as a "valuable right" or a "property right" in other jurisdictions. *State v. Schultz,* 11 Mont. 429, 28 Pac. 643; *Baker v. Department of Registration,* 78 Utah 424, 3 P. (2d) 1082; *Bley v. Board of Dental Examiners,* 87 Cal. App. 193, 261 Pac. 1036. From the case of *Abrams v. Jones,* 35 Idaho 532, 207 Pac. 724, we quote the following: "Where the state confers a license upon an individual to practice a profession, trade or occupation, such license becomes a valuable personal right which cannot be *denied or abridged* in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal." (Emphasis supplied.)

We are in accord with the authorities above cited and approve the language quoted therefrom as being applicable to this controversy. In the instant case plaintiff was duly licensed to practice the profession of engineering. He was not limited to any particular branch of that profession. We hold that one who has qualified for admittance and license to practice engineering without restriction, under the standards applicable at the time of admission, thereby acquires a valuable right fully protected and covered by the due process clause of the Federal and State Constitutions. It follows, therefore,

that the legislature cannot by statute deny or abridge that right in any manner except for cause and "after due notice and a fair and impartial hearing before an unbiased tribunal."

 Every statute providing for the licensing of those engaged in a learned profession contains, or can provide, procedures for suspension or revocation of a license held by one who actually is found to be unfit or unworthy to continue in the practice. This is a sufficient protection to the public and affords ample opportunity for a reasonable exercise of the police power in the public interest. The trial court was correct in holding that, by the statute in question, the plaintiff was deprived of a valuable right without due process of law.

Second: *Assuming that the profession of engineering is one which may be divided into branches, and that those licensed to practice may be limited to a particular branch thereof by proper statutory inactment, does chapter 161 of the 1951 Session Laws of Colorado, illegally delegate legislative powers to administrative officials?*

This question is answered in the affirmative. Upon the question of whether the profession of engineering is subject to regulation by classification into branches, we express no opinion. For the purpose of testing the 1951 engineering statute with reference to the above question we assume that the profession might conceivably be thus regulated. The statute contains, inter alia, the following provisions:

"The term 'professional engineer' within the meaning and intent of this Act shall mean a person who, by reason of his special knowledge of the mathematical and physical sciences and the principles and methods of engineering analysis and design, acquired by professional education and practical experience, is qualified to practice engineering as hereinafter defined, as attested by his legal registration as a professional engineer.

\* \* \*

"The term 'practice of engineering' within the mean-

ing and intent of this Act shall mean any professional service or creative work requiring engineering education, training and experience and the application of special knowledge of the mathematical, physical and engineering sciences of such professional services or creative work as consultation, investigation, evaluation, planning, design, and supervision of construction for the purpose of assuring compliance with specifications and design, in connection with any public or private utilities, industrial buildings, structures, machines, equipment, processes, works, or projects."

No definition of any particular branch of engineering is contained in the statute, and no standards are fixed and determined by which a classification could be made. Section 11 of the Act provides in part:

"The engineering branches in which the registrant may be listed as having qualified for registration are the following: 'Agricultural Engineering,' 'Chemical Engineering,' 'Civil Engineering,' 'Electrical Engineering,' 'Mechanical Engineering,' 'Mining Engineering' and 'Structural Engineering.'"

No standards are fixed by the Act which shall be applied in determining the distinctions to be drawn between these various specializations of the broad field of engineering. Without question, many fundamental scientific principles are common to all of them, and every field of the profession overlaps into another. Without standards fixed by the law, the discretion to declare what the law is, is delegated to the board. This cannot legally be done.

Other instances in which there is a total absence of adequate standards are found in the following portions of the statute: In section 12 are the following provisions, the objectionable portions of which we have italicised: "The following shall be considered as minimum evidence satisfactory to the Board that the applicant is qualified for registration as a professional engineer, or land surveyor, or for certification as an engineer-in-train-

ing, respectively: (1) As a professional engineer: a. Graduation in an *approved* engineering curriculum of four years or more *from a school or college approved by the Board* as of satisfactory standing; and a specific record of an additional four years or more of experience in engineering work *of a character satisfactory to the Board,* and indicating that the applicant is competent to practice engineering (in counting years of experience, the Board *at its discretion* may give credit, not in excess of one year, for satisfactory graduate study in engineering), provided that in a case where the evidence presented in the application *does not appear to the Board conclusive nor warranting the* issuing of a certificate of registration, the applicant may be required to present further evidence *for the consideration of the Board,* and may also be required to pass on oral or written examination, or both, *as the Board may determine;* or

"b. A specific record of eight years or more of experience in engineering work *of a character satisfactory to the Board* and indicating that the applicant is competent to practice engineering; and successfully passing a written, or written and oral, examination designed to show knowledge and skill approximating that attained through graduation in an approved four-year engineering curriculum; or

"c. A specific record of twelve years or more of *lawful* practice in engineering work *of a character satisfactory to the Board* and indicating that the applicant is competent to practice engineering *and provided applicant is not less than thirty-five years of age.*

\* \* \*

"(3) As a Land Surveyor: a. Graduation from a school or college *approved by the Board* as of satisfactory standing, including the completion of *an approved* course in surveying; and an additional two years or more of experience in land surveying work *of a character satisfactory to the Board* and indicating that the applicant is competent to practice land surveying; or

b. A specific record of six years or more experience * * * *of a character satisfactory to the Board* * *
c. A specific record of ten years or more of *lawful* practice in land surveying work *of a character satisfactory to the Board and provided applicant is not less than thirty years of age."*

A study of these provisions leads inescapably to the conclusion that upon the whole question of qualifications for registration of engineers, there has been an illegal delegation of legislative authority to the board. The applicable law is stated in the opinion of this court in *Sapero v. State Board of Medical Examiners,* 90 Colo. 568, 11 p. (2d) 555, as follows:

"The general assembly may not delegate the power to make a law; but it may delegate power to determine some fact or a state of things upon which the law, as prescribed, depends. *Colorado and Southern Railway Co. v. State Railroad Commission,* 54 Colo. 64, 84, 129 Pac. 506; *Field v. Clark,* 143 U. S. 649, 694, 12 Sup. Ct. 495, 36 L. Ed. 294. See also 48 C.J., page 1096, section 64, as applied to physicians and surgeons.

"The subject of nondelegable powers covers a wide range, but we adopt the concise statement employed by our highest court in *Field v. Clark, supra,* at pages 693, 694 of its opinion, which reads: " 'The true distinction * * * is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' "

The judgment is affirmed.