**Julius E. KERN, Plaintiff,**

v.

**TRI–STATE INSURANCE COMPANY, a corporation, Defendant.**

**No. 65 C 309(1).**

United States District Court
E. D. Missouri, E. D.

Sept. 21, 1966.

MEMORANDUM OPINION

HARPER, Chief Judge.

This matter is before the court on defendant's motion for summary judgment. The petition alleges that the plaintiff was engaged in the insurance business, both as an insurance broker and as an insurance agent; that the plaintiff in 1949 or 1950 was appointed agent for the defendant to sell automobile insurance policies; that in 1953 the defendant wrongfully terminated plaintiff's agency contract; that as a result of said breach of contract and wrongful termination the plaintiff is entitled to damages in the sum of $50,000.00; and that from sometime in late 1952 until June of 1962 the plaintiff was insane.

Attached to the defendant's motion for summary judgment is an affidavit alleging that the plaintiff in 1958 in Cause No. 58C 53(1) in this court sued the defendant on this same cause of action, and that 58C 53(1) was dismissed by the late Judge Moore on September 6, 1958, and a copy of the order of the court is attached to the affidavit.

The affidavit further states that the plaintiff filed a claim under the Missouri Workmen's Compensation Act in connection with an alleged accident which occurred December 18, 1952, being represented by an attorney therein, and that on June 6, 1958, the plaintiff's deposition was taken, at which deposition he was represented by an attorney; that subsequently the plaintiff hired another attorney, and on February 2, 1960, a compromise settlement for $1,500.00 was entered into, and that Exhibit B attached to the affidavit has to do with said settlement; that Exhibit B is signed by the plaintiff and his attorney and it sets forth the nature of plaintiff's disability as "general nervous breakdown, as diagnosed by his own doctor, Dr. Kubitschek."

The affidavit further states that the plaintiff filed a suit against Prudential Insurance Company of America in this court, being Cause No. 10898, and that on April 30, 1959, at the trial of said

Donald S. Hilleary, Hilleary & Hilleary, Clayton, Mo., for plaintiff.

John L. Harlan, Jr., Harlan & Harlan, St. Louis, Mo., for defendant.

cause, Dr. Paul Kubitschek testified to the effect that in April of 1954 the plaintiff was competent to receive money and to give receipts therefor, and there was no question about his competency to do so.

The affidavit further sets out that the plaintiff has failed to commence his cause of action within five years of the alleged claim as required by the Revised Statutes of Missouri, Section 516.120. The affidavit further states that during the period mentioned in plaintiff's petition that plaintiff was for a period of time employed by the law firm of Vatterott & Shaffer; that the plaintiff filed a number of lawsuits and made a claim under the Workmen's Compensation Act of Missouri; and that at all times he had access to legal advice and attorneys, took part in bankruptcy proceedings, and was never adjudged incompetent.

The only affidavit filed by the plaintiff at the time the motion for summary judgment was heard on February 4, 1966, was one made by Donald S. Hilleary, the attorney for plaintiff, which affidavit was based on hearsay, and when the motion was heard the court suggested to the plaintiff's attorney that affidavits be supplied from the doctor since he was relying upon a doctor, as to plaintiff's mental ability. A request to be given time to furnish such an affidavit was granted.

On April 21, 1966, an affidavit signed by Dr. Robert L. Lam was filed with respect to the sanity of the plaintiff, the contents of which the court will discuss later. It is interesting to note, however, that in the file is a copy of a letter written by plaintiff's attorney to Dr. Lam on February 4, 1966, requesting an affidavit, detailing a statement of all the medical reports and hospital notes which Dr. Lam examined, the findings in each report that were significant, including the doctor who made the report and his findings, and a report of the examinations made by Dr. Lam of the plaintiff. Thereafter, on February 11th a second letter was addressed to the court advising that plaintiff's attorney had talked

to Dr. Lam and that the affidavit would be in the attorney's possession by the 16th or 17th of February. A letter in the file indicates that the affidavit would be furnished to the attorney within a day or two after that. On March 24, 1966, the plaintiff's attorney sent to the court a copy of an affidavit which had been forwarded to Dr. Lam for signature and advising the court that upon receipt of this affidavit it would be sent to the court. On April 20th the executed affidavit, being the original of the copy previously sent to the court by the attorney, was mailed to the court and was filed on April 21, 1966.

The affidavit of Dr. Lam states that he first saw the plaintiff on June 29, 1962, and that in his opinion the plaintiff was of unsound mind continuously from December, 1952, until after June 29, 1962, the date that he first saw him. His opinion is based upon letters written by Doctors Charles Miller, Martin Davis, Paul E. Kubitschek, George Lawrence, Robert Mueller, Walter L. Moore, James Nakada and Wilbert Gansloser, and some summaries of hospital records. The letter from Dr. Gansloser was dated December 2, 1964.

It is undisputed in this case by the attorneys that the statute of limitations with respect to plaintiff's cause of action is five year, and that it would have run long ago against the plaintiff's cause of action unless it is tolled by Section 516.170, R.S. of Mo. 1959, which states:

"If any person entitled to bring an action * * * at the time the cause of action accrued be * * * insane, * * * such persons shall be at liberty to bring such actions within the respective times in sections 516.100 to 516.370 limited after such disability is removed."

The plaintiff alleges that the cause of action occurred in 1953 and the plaintiff alleges he was mentally insane from late 1952 until June, 1962. Thus, if the plaintiff can show that he was insane for this period of time his cause of action has been timely filed.

■ The law is well settled in Missouri that one claiming exemption under the terms of the above-referred-to statute has the burden of proving that he comes within its terms. In Campbell v. Laclede Gas Co., 84 Mo. 352, aff'd 119 U.S. 445, 7 S.Ct. 278, 30 L.Ed. 459, it is stated:

"When a party claims the exemptions of the statute of limitations, it is incumbent upon him to make them out by satisfactory proof, the burden is on him." (84 Mo. l. c. 375–376)

■■ The purpose of a motion for summary judgment is to show that there is no material issue of fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c) Federal Rules of Civil Procedure. The burden of showing that there is no material issue of fact existing is upon the movant. Caylor v. Virden, 217 F.2d 739, 741 (8 C.A., 1955).

Since the plaintiff's action is clearly barred by the Missouri statute of limitations unless the plaintiff can show that he fell within the terms of the exemption, the burden that the movant must meet is to show that there is no material issue as to the plaintiff's sanity. This burden is upon the movant only for the purposes of this motion, and in no way affects the burden of proof at trial.

■ It is, therefore, necessary to examine the pleadings and affidavits before the court for the purpose of ruling on this motion. The defendant in its affidavit refers to Julius E. Kern v. Prudential Insurance Company of America, Cause No. 10898, and a part of the testimony taken therein, but in considering and deciding this motion this court can and does take judicial notice of records from other proceedings which have occurred in this court. Meredith v. Van Oosterhout, 286 F.2d 216, 217 (8 C.A. 1960).

With this in mind the court turns to the history of the litigation with respect to the termination of plaintiff's agency contract, with which we are confronted in this lawsuit. The records disclose that in 1956 the plaintiff filed a suit in the Circuit Court of the City of St. Louis involving the cancelation of a similar insurance agency contract against the Home Indemnity Company, et al. The case was removed to this court on June 26, 1956 (Cause No. 10775). The plaintiff was represented in this suit by the law firm of Vatterott & Shaffer. Depositions were taken in said cause and among those depositions is one of the plaintiff. The defendant filed a motion for summary judgment, and later an amended or supplemental motion for summary judgment, and on November 22, 1957, this court (Harper, Judge) filed a memorandum opinion granting summary judgment to the defendant on both counts, and said judgment was not appealed.

Thereafter, in 1958, the plaintiff (pro se) filed a number of suits in the Circuit Court of the City of St. Louis against more than thirty insurance companies, the basis of the suits being the same as the suit against the Home Indemnity Company, et al., and the case before the court. Nineteen of those suits were removed to this court. I shall not list the defendants, but only the numbers of the cases, which are: 58C 22, 58C 23, 58C 24, 58C 25, 58C 28, 58C 36, 58C 37, 58C 38, 58C 39, 58C 40, 58C 41, 58C 42, 58C 43, 58C 46, 58C 53, 58C 59, 58C 62, 58C 64 and 58C 65. The cases were assigned to all three judges and six of them fell to this court (Harper, Judge).

When these suits were originally filed plaintiff Kern was not represented by an attorney, but in the six cases before Judge Harper, on June 13, 1958, the law firm of Kramer & Chused entered its appearance. Correspondence in these files shows that the court repeatedly urged Kern to secure an attorney to represent him, motions were continued from time to time to enable the plaintiff to secure an attorney, and letters in the file from certain attorneys indicate that they had consulted at length with Kern, checked the law, and would not represent him, but in any event, in June Kramer & Chused entered their appearance, and

on July 11, 1958, all six of the cases before Judge Harper were dismissed by Kramer & Chused without prejudice.

The records in the other cases before Judge Moore and Judge Weber do not disclose the entry of appearance of any attorneys, but a short time after the six cases referred to above were dismissed the other cases were dismissed by Judge Moore and Judge Weber, respectively, and one of those dismissed by Judge Moore was a suit against the defendant in the present cause before this court and referred to in the affidavit filed in support of the motion for summary judgment.

The records of this court further show that in September of 1956 the plaintiff and his mother, as assignee, filed a suit in the Circuit Court of the City of St. Louis against Continental Casualty Company of Chicago, which was removed to this court on October 9, 1956, being Cause No. 10901. The plaintiff was suing on a health and accident policy which provided for a payment of $200.00 a month for total disability as long as the plaintiff lived. The file shows that Continental Casualty Company had paid Kern $200.00 monthly from November of 1952 until March, 1955. Kern was represented in this matter by Vatterott & Shaffer, attorneys, and on June 2, 1958, the matter was dismissed, having been adjusted, compromised and finally settled.

The court records further show that two suits were filed by the plaintiff against the Prudential Insurance Company of America (hereinafter referred to as Prudential case) involving life insurance policies in the state court and were removed to this court, being Causes Nos. 10898 and 58C 57. The two cases were ultimately consolidated for trial before Judge Harper and this is the case referred to in the affidavit attached to the motion for summary judgment. Three memorandum opinions were filed in the case, the first one on May 20, 1959, the second on December 3, 1959, and the last one on September 8, 1960. The case was appealed and is reported in

Kern v. Prudential Ins. Co., 8 Cir., 293 F.2d 251. The plaintiff was represented by Vatterott & Shaffer, attorneys, and without going into the nature of the case, the court will primarily deal with that part pertaining to the plaintiff's physical and mental conditions.

Dr. Lam in his affidavit referred to letters from Doctors Charles Miller and Martin Davis, and in a number of the files of the cases to which we have referred is the letter of Dr. Davis referred to by Dr. Lam, dated December 23, 1957, and also a letter from Dr. Miller, dated September 13, 1955. One of the letters to which Dr. Lam refers is dated September 13, 1965, and this may be the same letter. In any event, both letters show that Doctors Miller and Davis were the plaintiff's family doctors, being in the same office, and the letter from Dr. Davis refers to plaintiff's condition as a nervous condition, while the letter from Dr. Miller only says he has been ill for some time and that he has been under the care of Dr. Kubitschek. In a number of the files there is also a letter from Dr. Freimuth, and these letters in no instance refer to sanity.

Dr. Lam in his affidavit refers to a letter dated January 13, 1958, written by Dr. Paul E. Kubitschek. This letter is in a number of the files to which we have referred. Both Dr. Kubitschek, who specialized in neuropsychiatry, and Dr. Nakada, an internist and diagnostician, testified in the trial of the Prudential case (letters from both doctors being referred to by Dr. Lam), and at no time in their testimony did they indicate this man was insane. In fact, their testimony was to the contrary.

Dr. Lam in his affidavit refers to a letter from Dr. George Lawrence, dated March 13, 1959, and in this connection Pre-Trial Exhibit 3 in the Prudential trial is the "Consultation Notes", dated March 13, 1959, written by G. H. Lawrence, M.D., following an examination of the plaintiff ordered by the court at the defendant's request. This report was a part of the evidence which was be-

fore the court in the Prudential case. It may be the letter referred to by Dr. Lam.

The court records in the Prudential case show that at the trial of the case plaintiff was one of the witnesses and testified at length in his own behalf. The evidence is set out in considerable detail in the memorandum opinion filed by the court on May 20, 1959, and to a lesser degree in 293 F.2d 251. Suffice to say, for the purpose of this opinion, the testimony disclosed that the plaintiff was a lawyer and an accountant, who suffered a nervous breakdown in the latter part of 1952; that he was at first in St. John's Hospital, later in Alexian Brothers for about ten days, and then St. Vincent's until the spring of 1953; that his treating doctor during this period was Dr. Kubitschek; that in October of 1954 he went to work at the Chas. F. Vatterott Insurance Company, but that he did not draw any salary as he was collecting monthly payments from Continental Casualty Company; that when the Continental Casualty Company ceased paying him the first of October, 1955, he continued to work at the Chas. F. Vatterott Insurance Company until March 15, 1956, and during this time was paid $175.00 a month for part time work; that during this same period he worked at the law office of Vatterott & Shaffer, where he made $150.00 a month, and while he was employed at the law office he filed papers, looked up law, handled the bank account, investigated cases, contacted witnesses, took statements, prepared petitions and drew instructions in connection with matters other than the insurance cases in which he was involved; that Vatterott & Shaffer were his attorneys in the first of the agency contract cases (No. 10775), in which this court granted the defendant summary judgment; that Vatterott advised Kern that he did not think there was any merit in the agency contract cases and that at least a half dozen other St. Louis attorneys had advised him to the same effect; and that on March 15, 1956, the plaintiff changed employment and be-

came an employee of Joseph H. Vatterott Insurance Agency, where he was making $61.15 a week, plus receiving a car allowance of $35.00 a week, and in the years 1957 and 1958 was given $500.00 for a bonus in each year. In the early part of 1959 his services were terminated at the Joseph H. Vatterott Insurance Agency, a few months before the trial in the Prudential case.

The plaintiff presented the testimony of Dr. Paul E. Kubitschek, the doctor who had treated him for his nervous condition; Dr. James Nakada, who had treated him for general ailments sometime after he left St. Vincent's; and the consultation notes of Dr. G. H. Lawrence, who examined the plaintiff on the court's order at the defendant's request. In all of the letters which are in the various court files there is no indication in any respect that the plaintiff was insane.

At the trial in the Prudential case there was no indication by any of the doctors that this man was insane. In fact, in dealing with this question, the appellate court in Kern v. Prudential Ins. Co., supra, page 259, had this to say:

"Plaintiff does not plead that he was incompetent to contract in 1956 when the conversion option expired, nor is there proof to support such contention. The court in its fact findings expressly found that plaintiff was under no disability which would prevent him from timely requesting the policy conversion. Such finding is supported by substantial evidence and is not clearly erroneous."

No useful purpose would be served in discussing in further detail the testimony with respect to the plaintiff's competency, but now the court is faced in this case with an affidavit made by Dr. Lam, who first saw the plaintiff on June 29, 1962. The affidavit is the opinion of a doctor based on hearsay insofar as the period before 1962 is concerned, which is the period that would toll the statute of limitations.

Rule 56(e) of the Federal Rules of Civil Procedure in dealing with summary judgment proceedings provides in part:

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence * * * Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

To support the motion for summary judgment we have an affidavit supported by exhibits and references to court records, and the court has further taken judicial notice of its own record. Opposing that we have an affidavit of a doctor stating an opinion based completely upon letters written by other doctors and a summary of some hospital records. None of the documents upon which he bases his opinion are attached to his affidavit.

The admissibility of expert testimony is a matter of discretion for the trial judge and his decision will not be upset unless there is a clear abuse of discretion. Jones v. Goodlove, 8 Cir., 334 F.2d 90.

To accept the opinion of Dr. Lam is to refute the findings of this court, affirmed by the Court of Appeals, where the trial court based its decision with respect to the competency of the plaintiff on the testimony of the plaintiff, Dr. Kubitschek, who treated the plaintiff during the period in question, Dr. Nakada, who has been treating the plaintiff some since sometime after his release from the hospital, and Dr. Lawrence, who examined him on the court's order at defendant's request.

The court is of the opinion that under the record in this case and the records of this court there is no material dispute as to the facts, and those facts are that the plaintiff was not insane during the period alleged in his petition. Therefore, the statute of limitations was not tolled and the defendant is entitled to summary judgment.

Accordingly, the defendant's motion for summary judgment is sustained, and the clerk will prepare and enter the proper order to that effect.