EDWARD L. PINE, ERNEST H. CLARY, ROBERT W. MILLARD, REX R. LLOYD, BYRON S. HARDIE, GEORGE E. SUTTON, AND REX A. TYNES, AS MEMBERS OF AND CONSTITUTING THE STATE BOARD OF REGISTERED PROFESSIONAL ENGINEERS, AND THE STATE BOARD OF REGISTERED PROFESSIONAL ENGINEERS, APPELLANTS, v. JACK K. LEAVITT, RESPONDENT.

No. 5417

September 5, 1968 445 P.2d 942

*Harvey Dickerson,* Attorney General, *Daniel R. Walsh,* Chief Deputy Attorney General, *John G. Spann,* Deputy Attorney General, for Appellants.

*Boyd and Leavitt,* of Las Vegas, for Respondent.

508

## OPINION

By the Court, BATJER, J.:

Upon a motion by the respondent, Jack K. Leavitt, the trial court granted summary judgment and declared that NRS

625.180 through 625.210 inclusive, and NRS 625.520, were void and unconstitutional on the grounds that they are an illegal delegation of legislative authority.

The lower court further ordered that the appellants be forever restrained and enjoined from classifying the respondent or any others similarly situated into any branch or branches of engineering, and prohibited the printing, publishing and distributing of a roster of professional engineers which classified members into branches of engineering. The order for summary judgment and judgment also required appellants to issue respondent and others similarly situated, a registration card showing the respondent to be entitled to practice the profession of professional engineering without limitations as to any class or branch of the profession.

The respondent was graduated from Heald Engineering College in September of 1949. On October 5, 1951, he took and passed the Nevada engineer-in-training test. On July 7, 1953, he took the Nevada land surveyor examination. He passed only part "A" of that test. On October 19, 1953, he took and passed part "B" of the land surveyor examination. On November 16, 1953, he was approved as a registered land surveyor and issued a certificate. The respondent's title on this first certificate was phrased "Professional Engineer-Land Surveyor."

In 1961 the legislature amended the statute governing the licensing of land surveyors so as to expressly exclude land surveying from the profession of engineering.[1] Prior to this amendment, land surveyors had been a lesser category of "engineers" and were excluded from that status only by implication.[2]

The record shows that the respondent continued to be certified as a "Professional Engineer-Land Surveyor" until 1965. In 1966 he was issued a certificate which bore only the title "Land Surveyor."

On April 14, 1967, the respondent filed suit against the appellants requesting: (1) that the board be enjoined from classifying him as anything other than a professional engineer; (2) that the board be enjoined from publishing a roster of professional engineers with listings according to the different branches of engineering; (3) that NRS 625.180–625.210 and NRS 625.520 be declared unconstitutional; and (4) that the board be required to "return" him to the status of professional engineer without limitation as to field of practice.

---

[1] NRS 625.040(4). "The practice of land surveying does not include the design, either in whole or in part, of any structure of fixed works embraced in the practice of professional engineering as defined in NRS 625.050."

[2] NRS A 1961–312.

The appellants answered the respondent's complaint, and on June 16, 1967, the respondent moved for a judgment on the pleadings, or in the alternative, a summary judgment.

On July 21, 1967, the lower court granted Leavitt's motion for summary judgment. This appeal is taken from that order and judgment. As assignments of error the appellants claim that the lower court erred when it:

(1) Declared NRS 625.180 through 625.210 and NRS 625.520, unconstitutional.

(2) Enjoined the appellants from printing, publishing and distributing a roster of professional engineers that lists any classification into branches of engineering.

(3) Directed the appellants to issue the respondent and all others similarly situated, a registration showing their entitlement to practice the profession of professional engineer without limitation.

(4) Entered its order for summary judgment.

The question of the constitutionality of the challenged statutes must be considered first.

The summary judgment ordered by the trial court declared five separate statutory sections unconstitutional—NRS 625.180 to 625.210 inclusive, and NRS 625.520.

NRS 625.180 lists, in detail, the qualifications necessary for admission to the ranks of professional engineering. Although the phrase "satisfactory to the board" is used, the content of the statute is clear and unambiguous. NRS 625.190 requires that the board hold examinations twice a year and determine, from the results, in which branch of engineering the applicant is qualified. NRS 625.200 delineates the scope of the examinations, the manner in which they are to be given, and what shall constitute a passing grade. NRS 625.210 simply directs that the board award certificates to all those meeting the requirements of the chapter. NRS 625.520 provides the penalties to be inflicted upon those who practice engineering unlawfully.

The respondent argues that the discretion vested in the board, found in phrasing such as "satisfactory to the board," "approved by the board" and "as determined by the board," is so unfettered as to render the statutes unconstitutional as an undue delegation of legislative authority.

The basic test used to determine what powers can be lawfully delegated by the legislature, was first and best enunciated in Field v. Clark, 143 U.S. 649 (1892), wherein it is said, "the true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall

be, and conferring authority or discretion as to its execution, to be exercised in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." In the case of Douglas v. Noble, 261 U.S. 165 (1923), Mr. Justice Brandeis, speaking for the United States Supreme Court, said:

"The statute provides that the examination shall be before a board of practicing dentists, that the applicant must be a graduate of a reputable dental school, and that he must be of good moral character. Thus, the general standard of fitness and the character and scope of the examination are clearly indicated. Whether the applicant possesses the qualifications inherent in that standard is a question of fact. * * * The decision of that fact involves ordinarily the determination of two subsidiary questions of fact: The first, what the knowledge and skill is which fits one to practice the profession: The second, whether the applicant possesses that knowledge and skill. The latter finding is necessarily an individual one. The former is ordinarily one of general application. Hence it can be embodied in rules. The legislature itself may make this finding of the facts of general application, and by embodying it in the statute make it law. When it does so, the function of the examining board is limited to determining whether the applicant complies with the requirement so declared. But the Legislature need not make this general finding. To determine the subjects of which one must have knowledge in order to be fit to practice dentistry, the extent of knowledge in each subject; the degree of skill requisite; and the procedure to be followed in conducting the examination—these are matters appropriately committed to an administrative board. * * * And a Legislature may, consistently with the federal Constitution, delegate to such board the function of determining these things, as well as the functions of determining whether the applicant complies with the detailed standard of fitness."

Upon a thorough reading of the statutes under question, it becomes apparent that they enunciated the public policy as set forth by the legislature and established the basic standards to be required of engineers, vesting only a modicum of discretion in the board to carry out that policy and meet those standards.

In support of his position the respondent relies heavily upon Prouty v. Heron, 255 P.2d 755 (Colo. 1953), where the court held that the statute under attack was unconstitutional on the ground that it unlawfully delegated legislative authority to a state board. The wording of the Colorado statute was very similar to the wording of our statutes which were declared

unconstitutional by the lower court, however, we do not subscribe to the very stringent construction placed on their statute by the Colorado court.

The power to examine applicants, formulate the questions to be asked, grade the examinations and determine the degree of skill required for a specific profession has been consistently held to be an administrative rather than a legislative function. State v. Spears, 259 P.2d 356 (N.M. 1953); Clayton v. Bennett, 298 P.2d 531 (Utah 1956).

We find that the questioned statutes express a valid delegation of authority from the legislature to the state board of registered professional engineers. The trial court erred when it declared NRS 625.180 through 625.210 and NRS 625.520, illegal, invalid, void and unconstitutional.

In its order for summary judgment and judgment, the lower court restrained and enjoined the printing, publishing and distributing a roster of professional engineers that lists any classification into branches of engineering. Obviously, the lower court did not have NRS 625.170[3] before it when the order and judgment was entered.

We find that a roster may be printed, published and distributed in accordance with NRS 625.170. However, only the names of the registered professional engineers, land surveyors and engineers-in-training may be listed. Unless specific legislative authority is granted, the names of the license holders may not be listed in branch classifications.

The respondent contends that he was originally licensed as a professional engineer and that the appellants, by issuing him a license as a land surveyor, are attempting to revoke his status without cause and without a fair and proper hearing. The copy of the respondent's original certificate, which he attached as an exhibit to his complaint, belies this contention. His professional engineering status is qualified by the words "land surveyor."

The respondent is a licensed land surveyor and asserting that he is a professional engineer will not change his status.

---

[3]625.170: "The secretary of the board shall prepare once each year, or at intervals as established by the board, a roster showing the names and last-known addresses of all registered professional engineers, land surveyors and engineers-in-training. Copies of the roster shall be:
1. Mailed to each person so registered.
2. Placed on file with the secretary of state and county and city clerks.
3. Distributed or sold to the public."

We next turn to the question of whether or not the court erred in granting the respondent's motion for summary judgment.

Summary judgment is a drastic remedy. In Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979 (1963), this Court stated: "The rule is of course well recognized that in deciding the propriety of a summary judgment all evidence favorable to the party against whom such summary judgment was rendered will be accepted as true." Franktown v. Marlette, 77 Nev. 348, 364 P.2d 1069 (1961); Parman v. Petricciani, 70 Nev. 427, 272 P.2d 492 (1954).

NRCP 56(c)[4] authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where the truth is clearly evident and no genuine issue remains for trial. The purpose of the rule is not to deprive litigants of their right to a trial on the merits if they really have issues to try. Sartor v. Arkansas Gas Corp., 321 U.S. 620 (1944).

In McColl v. Scherer, 73 Nev. 226, 315 P.2d 807 (1957), this court said: "In Parman v. Petricciani, 70 Nev. 427, 272 P.2d 492, we approved the suggestion of the federal court therein quoted that trial judges should exercise great care in granting motions for summary judgment, and held that a litigant has a right to a trial where there is the slightest doubt as to the facts."

In the present case there was ample evidence presented by the appellants to compel the denial of respondent's motion for summary judgment.

The record contains certain documents showing that Leavitt had never taken the required second half of the professional engineers examination. The most significant of these documents is a letter dated February 1, 1967, from Edward L. Pine, chairman of the Board of Registered Professional Engineers to the respondent, advising him that he had not taken the required "part two" of the civil engineer examination. In that letter the board stated that it would waive the 8-year statute of limitation on the engineer-in-training test (the first half of the engineering test) that Leavitt had taken and passed on October 5, 1951,

---

[4]NRCP 56(c): "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

and that he should present himself for the second half of the engineering test in Las Vegas on June 10, 1967.

Furthermore, there was, before the lower court, all of the correspondence between Leavitt and the board from 1951–1967, in which it is clearly established that Leavitt was always registered only as a land surveyor, and that he had never taken the examination required of all professional engineers.

The lower court could have taken judicial notice of the rules and regulations of the Board of Professional Engineers and of the fact that the respondent's name was not on the list of professional engineers promulgated by the board. See 6 Moore's Federal Practice § 56.11(9), p. 9, 2085; 3 Barron and Holtzoff § 1236, p. 161; Kern v. Tri-State Ins. Co., 260 F.Supp. 378 (D.C.Mo. 1966).

The question of the respondent's professional status was at issue. It was not only a material fact but the heart of the litigation, and the appellants had a right to present their evidence and be heard on this important question.

The judgment of the lower court is reversed and the case remanded for further proceedings consistent with this opinion.

THOMPSON, C. J., COLLINS and ZENOFF, JJ., concur.

MOWBRAY, J., dissenting:

The majority has viewed the statutes involved in this controversy and found them constitutionally adequate. I disagree. As the court in Prouty v. Heron, 255 P.2d 755, 760 (Colo. 1953), stated after considering a very similar set of statutes:

"A study of these provisions leads inescapably to the conclusion that upon the whole question of qualifications for registration of engineers, there has been an illegal delegation of legislative authority to the board."

NRS 625.180, subsection 3, provides:

"3. No applicant for registration as a professional engineer shall be entitled to take the examination unless:

"(a) He is a graduate from an *approved* course in engineering of 4 years or more in a *school or college approved by the board as of satisfactory standing,* and has a specific record of an additional 4 years or more of active experience in engineering work *of a character satisfactory to the board,* and indicating that the applicant is competent to be placed in responsible charge of such work; or

"(b) In view of the requirements contained in paragraph (a) of this subsection, he has a specific record of 8 years or more of active experience in engineering work *of a character satisfactory to the board,* and indicating that the applicant is competent to be placed in responsible charge of such work." (Emphasis added.)

I do not find, as the majority did, that "the content of the statute is clear and unambiguous." In fact, it appears to me to give nearly unfettered discretion to the board. What is an "approved course in engineering"? What guides the board in determining whether the applicant's school or college is satisfactory? What type of engineering work "is of a character satisfactory to the board"? Only the board could know, and only the board need be satisfied in these matters. No external standard is enunciated by the statute. There is virtually no statutory basis upon which an aggrieved applicant could appeal from an adverse decision by the board on one of these matters. The statutory standard is satisfied simply by the action of the board.

A glance at NRS 625.210 demonstrates the same infirmity. The statute provides that the board shall issue a certificate of registration to an applicant "who, *in the opinion of the board,* has satisfactorily met all the requirements of this chapter." (Emphasis added.)

Subsection 2 of NRS 625.210 provides:

"2. The certificate shall authorize the practice of professional engineering, followed by the branch or branches for which he is qualified."

NRS 625.020 provides that the branches of engineering are the recognized branches "as determined by the board."

Determining both the branches and the qualifications for applicants in the various branches is left completely within the discretion of the board. "Without standards fixed by law, the discretion to declare what the law is, is delegated to the board. This cannot legally be done." Prouty v. Heron, supra, at 759; Field v. Clark, 143 U.S. 649 (1892).

"The questions as to whom the act will apply, the qualifications for a certificate, and the means employed to demonstrate those qualifications are to be found only in the opinion of the committee. No standards are fixed by the act to guide their uncontrolled discretion. The committee may apply one standard to some applicants and another standard to others. The committee may base its opinion that the applicant has satisfactorily met the requirements of the act at one time upon certain standards as to such requirements, and at other times upon different standards entirely. The opinion of the committee as to

the requirements of the act would be subject to change with each change in the personnel of the committee." Krebs v. Thompson, 56 N.E.2d 761, 766 (Ill. 1944).

The unlawful delegation discussed above necessarily permeates the statutes providing for an examination by the board. NRS 625.190 and NRS 625.200. The purpose of the examination is to determine which branch or branches of professional engineering the applicant is qualified to practice. The broad discretion given to the board is particularly apparent in the following sentence in subsection 1(b) of NRS 625.200: "The board may reserve the right to conform the nature and extent of the examination to the particular qualifications of the applicant." A more flexible standard is hardly imaginable.

If the registration provisions are considered illegal, the penalty provisions of NRS 625.520 must also fall. They are primarily based upon a finding that one has been practicing engineering without being properly registered.

The lower court properly ruled that NRS 625.180 through 625.210 and NRS 625.520 constituted an unlawful delegation of legislative authority in violation of section 1, article 3, of the Nevada Constitution.

The judgment should be affirmed.