LEOLA BREWER, AS GUARDIAN AD LITEM OF BARBARA BREWER, A MINOR, APPELLANT, *v.* NORMAN ANNETT AND ALPHA ANNETT, RESPONDENTS.

No. 6134

October 15, 1970            475 P.2d 607

*Echeverria and Osborne* and *John T. Coffin,* of Reno, for Appellant.

*Laxalt, Bell, Berry, Allison & LeBaron,* of Carson City, and *Leslie A. Leggett,* of Reno, for Respondents.

## OPINION

By the Court, Mowbray, J.:

The appellant, Leola Brewer, as guardian ad litem of Barbara Brewer, commenced this action in district court to recover from respondents Norman and Alpha Annett the sum of $350,000 in damages for injuries suffered by Barbara, a minor, who accompanied her father, William Brewer, when he went on respondents' ranch to remove some scrap metal that Norman Annett had previously agreed to give Brewer. While her father was loading the junk, the child wandered onto a nearby, burned-off sagebrush area, and she was burned about her legs. A complaint was filed in district court. After discovery procedures had been completed, the Annetts moved for summary judgment, which the district judge granted. This appeal resulted. We affirm the order granting summary judgment in favor of the Annetts.

1. *The Facts.*

In March 1966 William Brewer asked Norman Annett if he could have some scrap metal located on the Annett Ranch in Smith Valley. Annett agreed that Brewer could have the scrap metal for the taking if he would in doing so remove several old car bodies located on the same junk pile. There was no time agreed upon as to when Brewer would haul away the scrap metal.

Sometime prior to Brewer's request, a sagebrush-covered area near the scrap metal had been burned off, and the buried coals from the ashes of the fire were still alive when Brewer returned about 2 weeks later with his family, including his young daughter, Barbara, and commenced removal of the debris. While Brewer was loading his truck, Barbara played on the burned-off area, and her injuries resulted. Both Annett and Brewer were aware of the previous fire, but Brewer in his deposition testified that he did not know that coals from a sagebrush fire oftentimes remain alive long after the principal fire has been extinguished.

2. *The Summary Judgment.*

We have held many times that a summary judgment may not

be granted if there exists a material issue of fact that must be determined by the trier of the facts. Bair v. Berry, 86 Nev. 26, 464 P.2d 469 (1970); Pine v. Leavitt, 84 Nev. 507, 445 P.2d 942 (1968). Further, in considering a motion for summary judgment the court must view the evidence most favorable to the party against whom it is directed, giving it full weight and resolving all reasonable inferences in that party's favor. Kaminski v. Woodbury, 85 Nev. 667, 462 P.2d 45 (1969); Zuni Constr. Co. v. Great Am. Ins. Co., 86 Nev. 364, 468 P.2d 980 (1970).

3. *The Annetts' Duty to Brewer.*

Counsel for appellant has urged in this appeal that Norman Annett had a duty to warn Brewer that the live coals from the sagebrush fire might still be burning and therefore constitute a hazardous condition. We do not agree. The district judge, in ruling on the motion for summary judgment, said:

"I have reached the conclusion, gentlemen, that as to ranch lands, particularly as they exist in our West, the doctrine that a child is an invitee upon those premises does not apply. The child at the best or at the most is a mere licensee and at the least a trespasser."

We agree with that observation. As a general proposition, a child accompanying his parent to a store or other place of public patronage achieves the same status as his invited parent. W. Prosser, Law of Torts, § 61 at 397 (3d ed. 1964); Cleghorn v. Thomas, 432 S.W.2d 507 (Tenn.App. 1968, *cert. denied,* Tenn. 1968); Hostick v. Hall, 386 P.2d 758 (Okla. 1963); Murphy v. Kelly, 105 A.2d 841 (N.J. 1954); Flynn v. Cities Serv. Refining Co., 28 N.E.2d 453 (Mass. 1940). The ranch here involved was not a place of public patronage, and there is nothing in the record to suggest that the rancher had reason to anticipate the child's presence there at any time or at all. The ranch area was approximately 8 miles from Wellington, Nevada.[1] In these circumstances, the general rule above mentioned is inapplicable.

---

[1]From the deposition of Norman Annett, taken June 5, 1969, at Reno, Nevada, by Leslie A. Leggett, Esq., attorney for defendants-respondents:

"Q Mr. Annett, where is your ranch premises with reference to any community, any city or town or community?

"A It is approximately, call it eight miles north of Wellington.

"Q Is your ranch located in a farming area?

"A Yes, *it is.*

"Q Are there any businesses in the area?

We conclude that under the posture of this case there is simply no legal theory upon which the Annetts could be held liable; therefore, the granting of the summary judgment was proper.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.

---

"A  There are not.

"Q  Is it all devoted to farming?

"A  To the best of my knowledge it is.

"Q  Prior to Barbara having the accident upon the thirty-eight acres that have been discussed this morning, had any children played on that thirty-eight acres?

"A  No, definitely not.

"Q  Did any children go on the thirty-eight acres?

"A  Never to my knowledge had any children been on it.

"Q  How long had you lived on the home ranch that you designated on the exhibit that has been referred to?

"A  Since 1936.

"Q  During the period that you have been there, since 1936, up to the present time, have you ever seen children playing on any of the thirty-eight acres that have been referred to?

"A  I never have.

"Q  Now, when you had your conversation with Mr. Brewer, out by the bridge that was being put in—

"A  On the county road.

"Q  —on the county road, was there any mention made by Mr. Brewer as to anyone who might accompany him?

"A  No.

"Q  Did you give him permission to go on the ranch at any time, on the thirty-eight acres at any time he so desired to get this junk?

"A  No, I did not.

"Q  Was there any specific time set that he could come to the thirty-eight acres?

"A  No, there was not, there was not.

"Q  As a matter of fact, did you give him explicit permission he could go on the thirty-eight acres?

"A  No, I did not.

"Q  Did you have any knowledge that Mr. Brewer was going to go on the thirty-eight acres to obtain the material?

"A  I did not.

"Q  Did you have any knowledge of Mr. Brewer or as to his family before he went on the land to obtain this material?

"A  No, I did not.

"MR. LEGGETT:  That is all."