RAY A. PETERSON, JR., AND ROBERT E. PETERSON, APPELLANTS, *v.* ORRIN D. FREEMAN AND BONNIE FREEMAN, HIS WIFE, RESPONDENTS.

No. 6140

December 14, 1970                    477 P.2d 876

[Rehearing denied February 11, 1971]

*A. D. Jensen,* of Reno, for Appellants.

*Leo P. Bergin,* of Reno, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal from an order of the district court granting a $20,000 summary judgment in favor of respondents, the Freemans, and awarding them an additional $1,500 for their attorney's fees. We approve the $20,000 award, but we reject the $1,500 allowance for attorney's fees. The judgment as so modified is affirmed.

1. In 1965, the Freemans sold all of the stock in their business, known as Chesnut and Freeman, Inc., to appellants, the Petersons, and Warren M. Brown. The business was primarily concerned with the sale and repair of motor trucks. The partners finalized their negotiations in a written agreement dated June 30, 1965. The agreement provided that the appellants would pay the Freemans $45,000 for all the common stock of the corporation, consisting of 24,000 shares, payable by depositing $15,000 in escrow with Leslie M. Fry of Reno and the remaining balance of $30,000 to be paid in six annual installments of $5,000 each, commencing July 1, 1966. In the agreement of June 30, 1965, the Freemans warranted "that as of March 31, 1965, the net worth of CHESNUT AND FREE-MAN, INC." was $38,230.28. The net worth figure was based principally on the physical inventory of the company and its accounts receivable. In this connection, the parties agreed that a physical inventory of the business would be taken within 15 days, "priced at the unit cost invoice price appearing on the last invoice in point of time," and the Freemans agreed, among other things, to deposit for the appellants' inspection with the escrowee a list of the accounts receivable.[1]

[1] "3. SELLERS shall within fifteen (15) days following the execution of this agreement cause or allow the following to be done:

"(a) SELLERS and BUYERS, or their agents or nominees shall forthwith cause a physical inventory to be taken. The inventory price of each item shall be priced at the unit cost invoice price appearing on the last invoice in point of time.

"(b) Rebuilt machines, motors and other rebuilt items of equipment shall be inventoried at current catalogue prices, except for one rebuilt Cummins engine which shall be valued not to exceed $4,200.00.

"(c) SELLERS shall deposit with a mutually agreeable escrowee a Bulk Sales Affidavit, containing the names, addresses and amounts of each and every creditor of CHESNUT AND FREEMAN, INC.; BUYERS shall assume and pay each and every creditor's claim listed thereon. Any creditor's claim not listed or appearing thereon shall be paid by SELLERS.

"(d) BUYERS shall assume possession of the premises on July 1, 1965.

"(e) SELLERS shall deposit with the escrowee all leases, together with consent to assignments thereof executed by the respective Lessors authorizing BUYERS or a corporate entity to be formed by them to obtain the possession of the leased premises for the balance of the term of said lease.

"(f) Deposit with the escrowee a list of all accounts receivable.

"(g) Deposit a true and correct balance sheet of CHESNUT AND FREEMAN, INC., as of June 30, 1965.

"(h) Deposit with the escrowee all outstanding shares of common stock duly endorsed in blank. SELLERS represent there is a total of

The parties further agreed that the escrowee, among other things, should hold the $15,000 down payment and not release it to the sellers until the completion of the taking of the inventory, "which shall be approved by SELLERS and BUYERS," and the receipt in escrow of a list of all accounts receivable plus a balance sheet of Chesnut and Freeman, Inc. as of June 30, 1965.[2]

The physical inventory was taken and approved in writing by the appellants on June 30, 1965. The schedule of the accounts receivable and the balance sheet of June 30 were deposited with the escrowee, as provided in paragraph 11 of the agreement. Thereafter, the escrowee released the $15,000 down payment to the Freemans. Appellants took possession of the business and operated it. They paid the $5,000 annual installment payments due on July 1, 1966, and July 1, 1967. They thereafter sold the business to a third party. They have refused, however, to pay the annual installment due July 1,

---

TWENTY–FOUR THOUSAND (24,000) shares issued and outstanding. The NINE THOUSAND (9,000) shares held in escrow by BRYCE RHODES as agent for KEITH CHESNUT as a pledge for the payment of the balance due KEITH CHESNUT by CHESNUT AND FREEMAN, INC., and which said sum is listed as a liability of said corporation in arriving at the net worth shall be processed by SELLERS and BUYERS through the escrow agent hereinafter named and in accordance to the instructions hereinafter provided."

[2]"11. It is agreed that *LESLIE M. FRY, ESQ., 105 North Sierra Street, Reno, Nev.* shall be and is hereby appointed the escrow agent for SELLERS and BUYERS herein and is so instructed as follows:

"(1) To hold the $15,000.00 down payment subject to the following conditions:

"(a) The taking of the inventory which shall be approved by SELLERS and BUYERS.

"(b) The deposit of the Bulk Sales Affidavit into escrow.

"(c) The deposit in escrow of the lease together with an assignment thereof with a consent to assignment.

"(d) The deposit in escrow of a list of all accounts receivable.

"(e) The deposit in escrow of a balance sheet of CHESNUT AND FREEMAN, INC., as of June 30, 1965.

"(f) The deposit in escrow of 24,000 shares of stock of CHESNUT AND FREEMAN, INC. endorsed in blank as a pledge for the payment of the KEITH CHESNUT promissory note and the balance of the purchase price.

"(g) The adjustment, if any required, is made in the sale price which shall be done in accordance to the formula set forth in paragraph 6 of this agreement and shall be deducted from the last annual installment or installments of the purchase price.

"When the above conditions (a) through (g) are met, the $15,-000.00 shall be paid to SELLERS."

1968. The Freemans then commenced this action in district court by filing a complaint to recover the remaining purchase price of $20,000 due under the terms of the agreement. The appellants-defendants answered by alleging that the net worth of the business did not equal $38,230.28, as warranted by the Freemans, because (1) the physical inventory was obsolete and (2) certain accounts receivable were found to be uncollectible. Thereafter, the Freemans moved for summary judgment in their favor, which the court granted, plus allowing them $1,500 for their attorney's fees.

2. It is axiomatic that summary judgment may not be granted if there exists a material issue of fact that must be determined by the trier of the facts. See Brewer v. Annett, 86 Nev. 700, 475 P.2d 607 (1970). We reject appellants' contention that in this case there exists a material issue of fact to be resolved by the court. The appellants' refusal to pay is based on two contentions: (1) that the physical inventory was obsolete and (2) that certain accounts receivable were found to be not collectible. There is nothing in the agreement of the parties warranting the nonobsolescence of the inventory, or guaranteeing that all of the accounts were collectible. A physical inventory was taken prior to close of escrow. Appellants had a representative present when it was taken. They later approved it by letter form dated June 30, 1965, and they deposited the letter with the escrowee as provided in the agreement. The schedule of accounts receivable was also deposited in escrow and was subject to inspection by the appellants. Thereafter, the escrowee released the $15,000 down payment to the sellers. All of the conditions from (a) through (g) of paragraph 11(1) of the agreement were satisfied before "the $15,000.00 . . . [was] paid to SELLERS."

Appellants have argued that, under the provisions of paragraph 11(1)(g) of the agreement, the adjustment, if any, of the purchase price of $45,000 could have been determined at any time prior to the payment of the last annual $5,000 installment on July 1, 1971. We do not agree. Paragraph 11(1)(g) provides in part that when "[t]he adjustment, if any required, is made in the sale price . . . [it] shall be done in accordance to the formula set forth in paragraph 6," which provides in part: "If, upon *the taking* of the physical inventory and the preparation of the balance sheet as of June 30, 1965, the net worth is less than the above stated figure, then the

purchase price shall be reduced proportionately."[3] (Emphasis added.) Paragraph 11(1)(g) merely adds that if an adjustment in the price is required it shall be *deducted* from the final annual installment of the total price paid. After the close of escrow, the appellants took possession, operated the business, and eventually sold it to a third party. They made the first two annual installment payments due on the remaining purchase price in July 1966 and July 1967.

Viewing the evidence in the light most favorable to the appellants, we find no material issue to be resolved by the court and that therefore the respondents-plaintiffs were entitled to a summary judgment. Kaminski v. Woodbury, 85 Nev. 667, 462 P.2d 45 (1969).

3. NRS 18.010 grants to the trial court the power to award attorney's fees to a prevailing party when the principal amount recovered does not exceed $10,000.[4] Here, the

---

[3] "6. BUYERS AND SELLERS do specifically covenant and agree that the sole and inducing cause of the purchase of CHESNUT AND FREEMAN, INC., has been the SELLERS' representation that the net worth of CHESNUT AND FREEMAN, INC., was THIRTY–EIGHT THOUSAND TWO HUNDRED THIRTY and 28/100 ($38,230.28) DOLLARS as of March 31, 1965. If, upon the taking of the physical inventory and the preparation of the balance sheet as of June 30, 1965, the net worth is less than the above stated figure, then the purchase price shall be reduced proportionately. The proportion shall be equal and amount to Thirty-Eight/Forty-Fifths (38/45), that is to say, 38/45 of the lesser net worth figure shall be subtracted from the purchase price."

[4] NRS 18.010:

"1. The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosesoever hands they may come, and cannot be affected by any settlement between the parties before or after judgment. There shall be allowed to the prevailing party in an action, or special proceeding in the nature of an action, in the supreme court and district courts, his costs and necessary disbursements in the action or special proceeding, including:

"(a) Clerk's fees.

"(b) Costs of depositions obtained by the prevailing party and used by him at the trial.

"(c) Jury fees as provided in NRS 6.150.

"(d) Witness fees of witnesses as provided in NRS 48.290.

"2. The court may allow to the prevailing party the fees of expert witnesses in an amount not to exceed $250.

respondents-plaintiffs recovered a $20,000 judgment, and the judge granted them $1,500 for their attorney's fees. They argue that such is permissible in this case because they sued in two counts—one for the $5,000 annual installment due July 1, 1968, and the other for $15,000, representing the remaining annual installments due on the total purchase price. Respondents claim that the $1,500 attorney's fee was awarded on the first count only, where they recovered only $5,000, and is therefore allowable. We reject this contention, and we hold that it is the total judgment that governs and that where the amount recovered exceeds the statutory limit of $10,000 the court may not grant an award of attorney's fees.

Affirmed as modified.

ZENOFF, BATJER, and THOMPSON, JJ., and YOUNG, D. J., concur.

---

"3. The court may make an allowance of attorney's fees to:

"(a) The plaintiff as prevailing party when the plaintiff has not recovered more than $10,000; or

"(b) The counterclaimant as prevailing party when he has not recovered more than $10,000; or

"(c) The defendant as prevailing party when the plaintiff has not sought recovery in excess of $10,000."